Approved: _____
Jason M. Swergold
Assistant United States Attorney

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :    SEALED COMPLAINT
                                :
       - v. -                   :    Violations of
                                :    20 U.S.C. § 7206;
REBECCA BAYUO,                  :    18 U.S.C. §§ 641, 1028A, & 2
                                :
           Defendant.           :    COUNTY OF OFFENSE:
                                :    BRONX
- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

Joseph J. Durak III, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service ("IRS"), and charges as follows:

COUNT ONE
(Assisting in Filing Fraudulent Tax Returns)

1. From at least on or about January 1, 2010 up to and including at least on or about April 15, 2012, in the Southern District of New York and elsewhere, REBECCA BAYUO, the defendant, willfully and knowingly did aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with matters arising under, the internal revenue laws of the United States, of a return, affidavit, claim, and other document, to wit, U.S. Individual Income Tax Returns, Forms 1040, and accompanying forms and schedules, which returns were false and fraudulent as to material matters, in that, among other things, the returns fabricated and/or falsely overstated items such as dependents, unreimbursed employee business expenses, Schedule C business income or losses, and/or earned income tax credits.

(Title 26, United States Code, Section 7206(2) and
Title 18, United States Code, Section 2.)

COUNT TWO
(Theft of Government Funds)

2.   From at least on or about January 1, 2010 up to and including at least on or about April 15, 2014, in the Southern District of New York and elsewhere, REBECCA BAYUO, the defendant, willfully and knowingly did embezzle, steal, purloin, and convert to her own use and the use of another, vouchers, money and things of value of the United States and a department and an agency thereof, to wit, the IRS, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, BAYUO prepared fraudulent tax returns for the purpose of obtaining tax refund checks and cashed, and aided and abetted the cashing of, those fraudulently obtained tax refund checks.

(Title 18, United States Code, Sections 641 and 2.)

COUNT THREE
(Aggravated Identity Theft)

3.   From at least on or about January 1, 2010 up to and including at least on or about April 15, 2014, in the Southern District of New York and elsewhere, REBECCA BAYUO, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, BAYUO used the names and social security numbers of other people during and in relation to the felony violation charged in Count Two of this Complaint, knowing that these means of identification belonged to other real people.

(Title 18, United States Code, Sections 1028A(a)(1) and 2.)

    The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.   I am a Special Agent with the IRS. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the

course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

### The Defendant's Tax Preparation Business

5. Based on my involvement in this investigation, my training and experience, my review of IRS records, my review of financial statements and bank account documents, my review of records from companies that sell tax preparation software ("Tax Prep Company-1" and "Tax Prep Company-2"), and my discussions with other IRS Special Agents who are investigating this case, I know, among other things, the following:

   a. REBECCA BAYUO, the defendant, owns and operates a business called Breakthrough Insurance Brokerage ("Breakthrough") that is located in the Bronx, New York, and is in the business of, among other things, preparing and filing tax returns.

   b. In or about December 2009, BAYUO purchased tax preparation software from Tax Prep Company-1, which provides tax filing services and products to businesses that file tax returns electronically.

   c. Records from Tax Prep Company-1 indicate that BAYUO gave the address, Breakthrough, on East 174th Street in the Bronx, New York, as the billing and shipping address for her purchase of the tax preparation software. Beginning in or about 2010, the billing address on Tax Prep Company-1's records was changed to Breakthrough, Attention Rebecca Bayuo, on Britton Street in the Bronx, New York (the "Britton Address"). Beginning in or about March 2015, BAYUO purchased tax preparation software from Tax Prep Company-2 and listed the Britton Address as the shipping address.

   d. In or about November 2009, BAYUO opened an account with Bank-1 in the name of "Rebecca Bayuo DBA Breakthrough Insurance Brokerage."

   e. In or about January 2013, BAYUO opened an account with Bank-2 in the name of "Breakthrough Insurance Brokerage, Rebecca C Bayuo Proprietor."

   f. The IRS assigns Electronic Filing Notification Numbers ("EFIN") to businesses that prepare tax returns so that the business can file multiple tax returns electronically on

behalf of clients. The IRS also assigns a Personal Tax Identification Preparer Number ("PTIN") to an individual who prepares tax returns and is listed on each tax return that the holder of the PTIN helps to prepare. In other words, an individual assigned a PTIN prepares tax returns on behalf of a tax filer.

g. For the 2010 and 2011 tax years, Breakthrough was assigned an EFIN ending in the three digits 208. For the 2012, 2013, and 2014 tax years, Breakthrough was assigned an EFIN ending in the three digits 316.

h. For the 2010 tax years, BAYUO filed tax returns using PTINs ending in the four digits 7471, 5759, and 5979. For the 2011, 2012, 2013, and 2014 tax years, BAYUO filed tax returns using a PTIN ending in the four digits 5979. The breakdown of returns filed by BAYUO by tax year and the approximate refund rate for these returns is as follows:

| Tax Year | 2010 | 2011 | 2012 | 2013 | 2014 (as of April 14, 2015) |
|---|---|---|---|---|---|
| Approximate Number of Returns Filed | 187 | 201 | 263 | 180 | 122 |
| Approximate Refund Rate[1] | 99% | 100% | 99% | 100% | 99% |

6. Based on my training and experience, I understand, among other things, the following about federal tax reporting:

a. Pursuant to the Internal Revenue Code and attendant regulations, individual taxpayers generally are required annually to report their income, tax liabilities, and, where appropriate, any claim for a refund on a U.S. Individual Income Tax Return, Form 1040, ("Form 1040"), which must be filed

---

[1] Based on my conversation with an analyst at the IRS's Scheme Development Center, I understand that a refund rate as high as the refund rate for returns submitted by REBECCA BAYUO, the defendant, is a strong indicator of a pattern of fraudulent returns.

4

with the IRS, which is part of the United States Department of the Treasury.

        b.   A Form 1040 includes a section called "Exemptions" where taxpayers can, among other things, list any dependents. A dependent can be either a "qualifying child," such as a son or daughter under a certain age who lives with the taxpayer, or a "qualifying relative," such as a mother who lives with the taxpayer, has a gross income below a certain threshold, and who is supported financially by the taxpayer. Taxpayers can claim an exemption for each dependent listed on their tax return, which has the effect of reducing the taxpayer's taxable income.

        c.   A Schedule A ("Itemized Deductions") is an IRS form that is attached to a Form 1040 when applicable and must be used by taxpayers to claim certain permissible deductions from taxable income. Deductions to be claimed on Schedule A can include, among other things: medical and dental expenses, gifts to charity, job-related and other miscellaneous expenses (such as unreimbursed employee expenses), and state and local taxes paid.

        d.   A Schedule C ("Profit or Loss From Business Sole Proprietorship") is an IRS form that is attached to a Form 1040 when applicable and must be used by taxpayers to report the gross receipts, expenses, and profit or loss from a business operated by the taxpayer as a sole proprietorship.

        e.   The Earned Income Tax Credit is a refundable tax credit that low-income taxpayers may claim depending on, among other things, whether their earned income is within a certain range, their investment income is not greater than a certain amount, and whether they file a joint return with their spouse.

Overview of the Scheme

        7.   As part of my investigation, I have learned that starting at least in or about January 2010 through at least in or about April 2012, REBECCA BAYUO, the defendant, assisted at least eleven taxpayers (collectively, the "Taxpayers") in filing with the IRS at least twenty-two (22) false or fraudulent tax returns for the 2009, 2010, and 2011 tax years (the "False Returns"). In addition, I have learned that starting at least in or about January 2011 through at least in or about April 2014, BAYUO filed with the IRS tax returns using the names and

5

social security numbers of real people who had not authorized her to file tax returns on their behalf.

### The False Tax Return Scheme

8.  Based on my review of the False Returns, I have learned, among other things, that:

    a.  Each of the False Returns listed BAYUO's name and Breakthrough as the paid preparer on the Form 1040 and/or listed a bank account number on Line 74 of the Form 1040 that is assigned to the account that BAYUO opened at Bank-1.[2] In addition, each of the False Returns filed for the 2010 tax year listed the PTIN ending in 5979, which is the PTIN assigned to BAYUO.

9.  By including false information on the tax returns, REBECCA BAYUO, the defendant, reduced the taxpayer's tax liability and/or increased the amount of the refund owed to the taxpayer. Based on my training and experience, I know that fraudulently increasing the size of refunds for clients, even without the clients' knowledge, is a common practice used by illegitimate tax preparers because doing so can lead to an expanding client base, which results in additional tax preparation fees for the preparer.

10. Based on my review of the False Returns and interviews of the Taxpayers conducted by law enforcement agents, I have learned, among other things, that REBECCA BAYUO, the defendant, used stolen names and social security numbers as fraudulent dependents on at least sixteen of the False Returns in order to increase the refund amount for each return.

    a.  In connection with being interviewed by law enforcement agents, nine of the Taxpayers reviewed tax returns that BAYUO prepared and filed on their behalf. Each Taxpayer confirmed that some or all of the dependents listed on their tax returns were fake and that they had paid BAYUO to use these dependents on their tax returns.

---

[2] Each of the False Returns filed by BAYUO for the 2009 tax year misspelled the paid preparer name as "Rebecca Abyuo," but included "Breakthrough Insurance Brokerage" and BAYUO's bank account number at Bank-1.

6

b. For example, BAYUO prepared and filed a tax return for an individual ("Taxpayer-1") for each of the 2009, 2010, and 2011 tax years. The 2009 return listed a nephew as Taxpayer-1's dependent, and the 2010 and 2011 returns listed a separate nephew as Taxpayer-1's dependent for those years. The listed nephews were not Taxpayer-1's nephews or dependents. Indeed, BAYUO provided the names and personal information for Taxpayer-1's purported nephews. Taxpayer-1 confirmed to law enforcement agents that Taxpayer-1 paid BAYUO $1,000 each year to include these dependents on Taxpayer-1's tax returns.

c. BAYUO also prepared and filed a tax return for an individual ("Taxpayer-2") for the 2011 tax year. The return listed a stepchild and a grandchild as Taxpayer-2's dependents. Taxpayer-2 confirmed to law enforcement agents that Taxpayer-2 did not know the individuals listed as dependents on the return, and that Taxpayer-2 paid BAYUO $2,000 to use these dependents. The purported dependents, in fact, had no relationship to Taxpayer-2, were not Taxpayer-2's dependents, and BAYUO supplied their names and personal information for use on Taxpayer-2's tax returns.

d. BAYUO also prepared and filed a tax return for an individual ("Taxpayer-3") for each of the 2009, 2010, and 2011 tax years. The 2009 and 2010 tax returns listed a nephew as Taxpayer-3's dependent, and the 2011 return listed the same nephew as Taxpayer-3's grandchild and dependent. The 2011 return also included an additional grandchild listed as Taxpayer-3's dependent. Taxpayer-3 confirmed to law enforcement agents that Taxpayer-3 paid BAYUO $800 to use each of these dependents. The purported dependents, in fact, had no relationship to Taxpayer-3, were not Taxpayer-3's dependents, and BAYUO supplied their names and personal information for use on Taxpayer-3's tax returns.

11. Based on my review of the False Returns and interviews of the Taxpayers conducted by law enforcement agents, I have learned, among other things, that REBECCA BAYUO, the defendant, included a false Schedule A on at least seven of the False Returns in order to increase the refund amount.

a. In connection with being interviewed by law enforcement agents, five of the Taxpayers reviewed tax returns that BAYUO prepared and filed on their behalf. Each of these Taxpayers confirmed that the information contained on Schedule A contained false information that they did not provide to BAYUO.

   b. For example, BAYUO prepared and filed a tax return for an individual ("Taxpayer-4") for the 2010 tax year. On Line 21 of the Schedule A, BAYUO falsely listed $17,500 in unreimbursed employee expenses. Taxpayer-4 confirmed to law enforcement agents that Taxpayer-4 did not incur these unreimbursed expenses in 2010, and did not tell BAYUO that Taxpayer-4 had, in fact, incurred such expenses.

   c. BAYUO also prepared and filed a tax return for Taxpayer-3 for the 2010 tax year that falsely listed $17,500 in unreimbursed employee expenses on Line 21 of the Schedule A. Taxpayer-3 confirmed to law enforcement agents that Taxpayer-3 did not incur these unreimbursed expenses in 2010, and BAYUO was not told otherwise. According to Taxpayer-3, BAYUO had told Taxpayer-3 that she would include unreimbursed transportation costs on the return, even though Taxpayer-3 did not own a car and worked at only one job site, and Taxpayer-3 did not provide BAYUO with any information about unreimbursed expenses.

   d. BAYUO also prepared and filed a tax return for Taxpayer-1 for the 2010 and 2011 tax years that falsely listed $17,500 and $21,420, respectively, in unreimbursed employee expenses on Line 21 of the Schedule A. Taxpayer-1 confirmed to law enforcement agents that Taxpayer-1 incurred approximately $25 in expenses each week, and did not incur these unreimbursed expenses in 2010 or 2011. According to Taxpayer-1, BAYUO asked Taxpayer-1 if Taxpayer-1 owned a car and bought gas for the car, but did not seek any additional information related to employment expenses.

   12. Based on my review of the False Returns and interviews of the Taxpayers conducted by law enforcement agents, I have learned that REBECCA BAYUO, the defendant, included a false Schedule C on at least two of the False Returns in order to increase the refund amount.

   a. In connection with being interviewed by law enforcement agents, two of the Taxpayers reviewed tax returns that BAYUO prepared and filed on their behalf. Each Taxpayer confirmed that the information contained on Schedule C contained false information that they did not provide to BAYUO.

   b. For example, BAYUO prepared and filed a tax return for an individual ("Taxpayer-5") for the 2011 tax year. On Line A of the Schedule C, BAYUO falsely listed "vendor" as Taxpayer-5's principal business and on Line 7 falsely listed $14,302 as Taxpayer-5's gross income. Taxpayer-5 confirmed to

law enforcement agents that Taxpayer-5 did not operate a vendor business in 2011, did not tell BAYUO that this was Taxpayer-5's business, and did not provide for BAYUO the gross income amount listed on the Schedule C.

        c.    BAYUO also prepared and filed a tax return for an individual ("Taxpayer-6") for the 2011 tax year. On Line A of the Schedule C, BAYUO falsely listed "cleaning" as Taxpayer-6's principal business and on Line 7 falsely listed $15,241 as Taxpayer-6's gross income. Taxpayer-6 confirmed to law enforcement agents that Taxpayer-6 did not provide BAYUO with any documentation to prepare the Schedule C and did not provide BAYUO with any income figures for inclusion on the tax return.

    13.    Based on my review of the False Returns and interviews of the Taxpayers conducted by law enforcement agents, I have learned, among other things, that REBECCA BAYUO, the defendant, prepared and filed at least three False Returns that fraudulently claimed the Earned Income Credit.

        a.    For example, BAYUO prepared and filed tax returns for an individual ("Taxpayer-7") for each of the 2009, 2010, and 2011 tax years. According to Taxpayer-7, BAYUO knew that Taxpayer-7 was married because BAYUO also prepared the tax returns for Taxpayer-7's spouse.

        b.    By filing as a head of household, Taxpayer-7 was able to take an Earned Income Credit in 2009, 2010, and 2011. Based on my training and experience, I am aware that the Earned Income Tax Credit is not available for married individuals who file separate tax returns.

    14.    Based on my review of bank records from Bank-1 and Bank-2 and interviews of the Taxpayers conducted by law enforcement agents, I have learned, among other things, that the Taxpayers did not directly receive a refund check from the U.S. Department of the Treasury. Instead, BAYUO received the refunds directly into her bank accounts with Bank-1 and Bank-2 and then provided the Taxpayers with a bank check for the amount of the refund less any tax preparation fee and any fees for BAYUO's false and fraudulent means of reducing the taxpayer's tax liability or increasing his or her refund.

    15.    Based on my review of an analysis of the False Returns prepared by other IRS Special Agents, I have learned, among other things, that:

          a.    The False Returns fraudulently claimed refunds totaling approximately $96,213 and deductions totaling approximately $354,000.

          b.    The additional tax due and owing for the False Returns totaled approximately $52,878.

### The Stolen Identity Refund Fraud ("SIRF") Scheme

    16.    Based on my training and experience, I am aware that a common type of tax fraud scheme involves filing tax returns using stolen identities. The scheme generally works as follows:

          a.    The individual perpetrating the scheme obtains stolen identifying information such as names and social security numbers and prepares tax returns using this information while also listing false income and exemptions. Typically, tax returns prepared with stolen identities claim large refunds.

          b.    The false tax return may also include the tax preparer's actual bank account number and routing number. When the refund is approved by the U.S. Department of the Treasury, the refund amount is deposited directly into the preparer's bank account. Alternatively, the preparer may elect to receive the refund in the form of a prepaid debit card which is issued in the name of the individual whose identity has been stolen.

### The Defendant's Participation in the SIRF Scheme

    17.    Based on my review of tax returns filed by REBECCA BAYUO, the defendant, with the IRS, and interviews with individuals whose names and social security numbers were included on tax returns that BAYUO filed with the IRS, I have learned, among other things, the following:

          a.    Beginning at least in or about January 2011 through at least in or about April 2014, BAYUO filed with the IRS at least thirty-two tax returns (the "Stolen Returns") using the names and social security numbers of at least eighteen individuals ("Victim-1" through "Victim-18", and collectively, the "Victims") who had not authorized BAYUO to file tax returns on their behalf.

          b.    Each of the Stolen Returns listed BAYUO's name and Breakthrough as the paid preparer and/or a bank account number on Line 74 that is assigned to the account that BAYUO opened at Bank-1. In addition, each of the Stolen Returns filed

for the 2010 tax year contained the PTIN ending in 5979, which was assigned to BAYUO.

c. In connection with being interviewed by law enforcement agents, each Victim was shown one or more tax returns with their name and social security number that BAYUO filed with the IRS. Each Victim confirmed, among other things, their name and social security number on the tax return, but otherwise did not recognize any of the other information contained in the return. Each Victim also confirmed that they did not know BAYUO and had never authorized BAYUO to file a tax return on their behalf.

d. All of the Stolen Returns claimed dependents that were listed in the "Exemptions" section of the Form 1040. Each Victim confirmed to law enforcement agents that they did not know the dependent(s) that were listed on the Stolen Returns filed in their names by BAYUO.

i. For example, BAYUO filed a 2011 return using the name of Victim-1, on which BAYUO listed two grandchildren as dependents. Victim-1 has confirmed to law enforcement agents that Victim-1 does not have any children or grandchildren.

e. Several of the Stolen Returns included a Schedule C on which BAYUO listed various businesses and business income purportedly earned by the taxpayer. Victim-1, Victim-2, Victim-3, Victim-4, Victim-5, Victim-6, and Victim-7 did not own their own businesses, despite the fact that the tax returns filed in their names by BAYUO included Schedule Cs claiming they worked as a vendor, cleaner, babysitter, driver, barber, babysitter, and vendor, respectively.

f. Several of the Stolen Returns also included fraudulent W-2s that purported to show the employment and income of the taxpayer. For example:

i. The 2013 tax return filed in Victim-8's name by BAYUO attached a W-2 form from a catering company, even though Victim-8 was unemployed in 2013.

ii. The 2010 and 2011 tax returns filed in Victim-9's name by BAYUO attached W-2 forms from a home care company, even though Victim-9 was employed in 2010 and 2011 as a lab associate at a hospital and did not work for a home health care provider.

11

    iii.  The 2010 and 2011 tax returns filed in Victim-10's name by BAYUO attached W-2 forms from a hotel, even though Victim-10 was employed in 2010 and 2011 by an orthopedist on Staten Island and did not work in the hotel industry.

    iv.  The 2011 tax return filed in Victim-11's name by BAYUO attached a W-2 form from a security firm ("Security Firm-1"), even though Victim-11 was employed by a sporting goods store in 2011 and did not work in the security industry. In addition, I have reviewed a letter from Security Firm-1 confirming that the company has never employed an employee with Victim-11's name or social security number.

    v.  The 2011 tax return filed in Victim-12's name by BAYUO attached a W-2 form from a home care company, even though Victim-12 was unemployed in 2011 and did not work in the home care industry. In fact, Victim-12 has been receiving Social Security disability benefits since 2009.

    vi.  The 2011 tax return filed in Victim-13's name by BAYUO attached a W-2 form from a bank, even though Victim-13 was employed at a pet store in 2011 and did not work at a financial institution.

    vii.  The 2011 tax return filed in Victim-14's name by BAYUO attached a W-2 form from a payroll company, even though Victim-14 was employed in 2011 by a government agency and did not work in the payroll industry.

    viii.  The 2011 tax return filed in Victim-15's name by BAYUO attached a W-2 form from a payroll company, even though Victim-15 was incarcerated in 2011 and did not work in the payroll industry.

  18.  Based on my review of IRS records and financial statements and bank records from Bank-1, I have identified U.S. Treasury Tax Refund deposits matching the amounts on at least fifteen of the Stolen Returns being made directly into REBECCA BAYUO's, the defendant, bank account at Bank-1.

  19.  Based on my review of an analysis of the Stolen Returns prepared by other IRS Special Agents, I have learned, among other things, that as a result of filing the Stolen Returns, BAYUO received over $130,000 in fraudulent refunds.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of REBECCA BAYUO, the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

_____
Joseph J. Durak III
Special Agent
Internal Revenue Service

Sworn to before me this
29th day of June, 2015

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK