UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/2019

UNITED STATES OF AMERICA,

    - against -

REBECCA BAYUO,

              Defendant.

15 Cr. 576 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

On November 1, 2018, after a two-week trial, the jury found the defendant, Rebecca Bayuo, guilty on sixteen counts of the twenty-one-count Second Superseding Indictment ("S2 Indictment").

In the S2 Indictment, the defendant was charged with seventeen counts of aiding and assisting in the preparation of false and fraudulent United States individual income tax returns in violation of 26 U.S.C. § 7206(2), one count of theft of Government funds in violation of 18 U.S.C. §§ 641 and 2, one count of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and 1028A(b), and two counts of subscribing to false individual income tax returns in violation of 26 U.S.C. § 7206(1). (S2 Indictment, Dkt. No. 132.) The Government did not pursue counts 4 and 5 at trial, and the jury found the defendant not guilty on three of the charges, counts 1, 6, and 15. Each of these five counts charged specific instances of

aiding and abetting in the preparation of false and fraudulent individual income tax returns.

At the end of the Government's case, the defendant moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The Court dismissed counts 4 and 5 and denied the motion as to all other counts.

The defendant now renews her motion for a judgment of acquittal pursuant to Rule 29 or, in the alternative, seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons explained below, the motions are **denied.**

**I.**

**A.**

To succeed on a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the defendant must show that "no rational trier of fact, viewing the evidence in the light most favorable to the Government, could have found [her] guilty beyond a reasonable doubt of the essential elements of the crimes charged." United States v. Desena, 287 F.3d 170, 176 (2d Cir. 2002). A defendant making an insufficiency claim "bears a very heavy burden." Id. at 177; see also United States v. Macklin, 927 F.2d 1272, 1277 (2d Cir. 1991).

In considering the sufficiency of the evidence, the Court must "view the evidence presented in the light most favorable to

2

the government, and . . . draw all reasonable inferences in its favor." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). The Court must analyze the pieces of evidence "not in isolation but in conjunction," United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999).

"[T]o avoid usurping the role of the jury," the Court must "not substitute [its] own determinations of credibility or relative weight of the evidence for that of the jury." Autuori, 212 F.3d at 114 (citation omitted). Thus, the Court must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998). The jury's verdict "may be based entirely on circumstantial evidence." United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995); United States v. Sattar, 395 F. Supp. 2d 79, 82-83 (S.D.N.Y. 2005), aff'd sub nom. United States v. Stewart, 590 F.3d 93 (2d Cir. 2009).

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a court will grant a new trial only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d

924, 949 (2d Cir. 1993).  In evaluating the sufficiency of the evidence for purposes of Rule 33, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted).  There must be "a real concern that an innocent person may have been convicted."  Id.  While the Court has "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," it must nonetheless "exercise the Rule 33 authority sparingly and in the most extraordinary circumstances."  Id. (citation and quotation marks omitted).

### B.

Considering the trial evidence in the light most favorable to the Government, a reasonable jury could have found that the Government established the following facts at trial.

Beginning in 2009, the defendant was the sole proprietor of a tax preparation business in The Bronx, New York, called Breakthrough Insurance Brokerage.  (Tr. at 62, 82.)  As part of her business, the defendant filed taxes for herself and on the behalf of others.  (Tr. at 62, 82.)

At trial, the Government presented evidence that the defendant was engaged in three different criminal schemes.  The first scheme was the client-tax-fraud scheme.  The evidence showed that the defendant filed false individual tax returns for

seven clients in order to increase the clients' refunds or reduce their taxable incomes. The Government called each of the seven clients to testify at trial. Each testified pursuant to a nonprosecution agreement and almost all of the clients testified that they expressly authorized the defendant to add false information to their tax returns in order to raise their refund rate or lower their tax liability.[1] The defendant often charged her clients $800 to $1,000 in exchange for including the false information on the client's tax return. (See Tr. at 184, 415, 598.) The Government also submitted as evidence twelve tax returns for years 2010 and 2011 filed by the defendant on behalf of the seven clients. Each of the twelve tax returns listed the defendant as the preparer and filer of the return and included claims for dependents that were false.[2]

The second scheme was the "stolen-identity refund fraud scheme." Under this scheme, the defendant used stolen

---

[1]    (Tr. at 178-79 (Frank Odei); Tr. at 414 (Idayatu Lawal); Tr. at 482, 487-88 (Dawud Abdulmumuni); Tr. at 598 (Samuel Adjetey); Tr. at 678 (Sarah Huadji); Tr. at 784-86 (Michael Tetteh).) The defendant also prepared a false tax return for Sarah Huadji under the name Sarah Fio for tax year 2011 as charged in count 9 of the S2 indictment. (Tr. at 693-95.) While Emmanuel Lomotey did not recall a conversation with the defendant about including false dependents on his 2010 and 2011 tax returns, the defendant included a dependent on those returns that Mr. Lomotey never heard of and the defendant charged about $1,000 for preparing each tax return, an amount consistent with charging Mr. Lomotey for including a false dependent. (Tr. at 653-62.)

[2]    (Tr. at 190-91 (Frank Odei); Tr. at 413-14, 417 (Idayatu Lawal); Tr. at 485-87 (Dawud Abdulmumuni); Tr. at 600, 603-04 (Samuel Adjetey); Tr. at 652-56 (Emmanuel Lomotey); Tr. at 679-80, 694-95 (Sarah Huadji); Tr. at 787-89 (Michael Tetteh).)

identities to file tax returns from in or about 2009 to in or about 2013. The defendant filed tax returns in the names of eleven different people whose identities had been stolen.[3] The defendant then pocketed the tax refunds issued by the Internal Revenue Service ("IRS"). As proof of this scheme, the Government offered each of the victim's tax returns into evidence and called the victims to testify. Each of these tax returns showed that the defendant was the person who filed the return.[4] Each of the tax returns also listed the defendant's bank account or tax product account[5] as the place to deposit the tax refunds.[6] Each victim witness testified that the witness's name and social security number, or the witness's child's name

---

[3]    (Tr. at 157-61 (Luis Rodriguez); Tr. at 550-52, 555-56 (Andy Molina); Tr. at 565-69 (Aixa Gonzalez); Tr. at 574-78 (Elizabeth Castro); Tr. at 748-53 (Jennifer Herrera); Tr. at 768-71 (Hilario Arias); Tr. at 851-53 (Selasi Senajor); Tr. at 861-63 (Caridad Lopez); Tr. at 870-71, 873-74 (Peter Romanys Ofodile); Tr. at 903-05 (Bianca Miranda); Tr. at 920-22 (Julissa Taveras).)

[4]    The defendant's name or the name of her tax preparation business appeared as the tax preparer on these tax returns, and the defendant used her Electronic Filing Identification Number ("EFIN") and Preparer Tax Identification Number ("PTIN") to file these returns. (Gov. Exs. 104-A, 104-D (Hilario Arias); 106-A, 106-C (Elizabeth Castro); 109-A, 109-C, 109-E (Aixa Gonzalez); 110-E, 110-G (Jennifer Herrera); 114-A, 114-E (Bianca Miranda); 115-C, 115-E (Andy Molina); 117-A, 117-C (Peter Romanys Ofodile); 118-A, 118-C, 118-E (Luis Rodriguez); 119-A, 119-E (Selasi Senajor); 120-A, 120-C (Julissa Taveras); 123-A, 123-C, 123-E (Caridad Lopez).)

[5]    At trial, a witness coordinator for the IRS, Kristy Morgan, explained that a tax product account is "a debit card or an account to where you can have [a tax refund] loaded [directly] into the account or onto a debit card." (Tr. at 91.)

[6]    See supra note 4. IRS records and bank account records confirm the defendant received refunds for a number of these tax returns. (Tr. at 1165-67; Gov. Ex. 304-B.)

and social security number, were on the tax return, but that the witness did not recognize dependents, occupations, and other information on the return and that the witness did not authorize the defendant to file a tax return on the witness's or the witness's child's behalf.[7]

Finally, under the "individual tax return scheme" the defendant included one false dependent on her 2013 tax return and two false dependents on her 2014 tax return. The Government offered both tax returns into evidence. (Gov. Exs. 105-I, 105-K.) The defendant's 2013 tax return listed Assatou Gikineh as the defendant's niece and as a dependent. (Gov. Ex. 105-I.) The defendant's 2014 tax return listed Julio Bello and Joseph Milito as the defendant's nephews and as dependents. (Gov. Ex. 105-K.) None of these people were related to the defendant and the people listed as dependents or their parents testified that they had no idea that the defendant listed them or their child as dependents on the defendant's tax returns. (Tr. at 327-28, 354-55, 403, 762.) The witnesses further testified that Assatou, Julio, and Joseph did not live with nor depend on the defendant in 2013 or 2014. (Tr. at 327-28, 354-55, 403, 762.) Both of these tax returns were electronically signed by the defendant under penalty of perjury. (Gov. Exs. 105-I, 105-K.)

---

[7] See supra note 3.

The defendant's bank account or tax product account were listed on the returns. (Gov. Exs. 105-I, 105-K; Tr. at 86, 91-92.)

The jury also heard from an IRS agent who audited the defendant in 2012 in connection with tax returns prepared and filed by the defendant for the 2010 tax year. The auditor reviewed over 100 of the defendant's client files and informed the defendant that she found the defendant's records to be deficient because they were missing signatures, supporting documentation of business income and expenses and dependent relationships, and any evidence of follow up questions posed by the defendant to her clients. (Tr. at 1016-19, 1035-57.) The Government also presented evidence that the defendant was notified by the IRS in 2015 that the defendant was under criminal investigation for identity theft and preparing false tax returns. (Tr. at 1086-87.)

The Government submitted into evidence a chart that showed where various dependents listed for taxpayers whose tax returns were filed by the defendant and admitted into evidence also appeared on 40 other tax returns filed by the defendant. (Gov. Ex. 186-R.) The chart showed that the defendant recycled dependents on the client witness tax returns and the identity-fraud victim tax returns on other tax returns filed by the defendant. (Gov. Ex. 186-R.)

On November 1, 2018, the jury returned a guilty verdict on counts 2-3, 7-14, and 16-21. The jury returned a verdict of not guilty on counts 1, 6, and 15.

After the defendant's motion was fully briefed, the defendant wrote a letter to the Court pro se. (See Dkt. No. 226.) In the letter, the defendant makes a number of claims, including that she has proof that one of the witnesses at trial -- Baidi Gikineh -- lied when he testified and that the Government fabricated tax returns that were presented as evidence against her.

## II.

The defendant moves for judgment of acquittal on each of the counts for which she was found guilty.

### A.

The defendant argues that the Government did not present sufficient evidence of willfulness for the jury to convict her. The argument is without merit. The Government presented more than sufficient evidence of willfulness for the jury to find the defendant guilty of aiding or assisting in the preparation of false and fraudulent United States individual income tax returns as charged in counts 2-3, 7-14, and 16-17.

"Willfulness may be inferred from circumstantial evidence," and "[t]he [Supreme] Court has not set limitations to the type of conduct from which willfulness can be inferred." United

States v. Klausner, 80 F.3d 55, 63 (2d Cir. 1996). "The law

. . . does not require direct evidence to prove mens rea

elements such as knowledge and intent, and repeatedly recognizes

that they can be proved through circumstantial evidence and the

reasonable inferences that such evidence allows." United States

v. Varanese, 417 F. App'x 52, 54 (2d Cir. 2011).

In this case, there was overwhelming evidence from which

the jury could have found that the defendant willfully aided and

assisted in the filing of fraudulent tax returns for each of the

counts on which she was found guilty. The Government put each

of the tax returns at issue into evidence and called each of the

clients for whom the tax returns were filed. Six of the seven

clients testified that they discussed with the defendant

including false dependents on their tax returns and that the

defendant agreed to include false dependents on their tax

returns. The defendant came up with the false dependent's name

and fraudulent description of relationship with the client.

Each of the twelve tax returns filed on behalf of these clients

listed the defendant as the preparer and filer, and each listed

one or more dependents that were false. The Government also

showed that the defendant used many of the false dependents on

other tax returns that she filed. The defendant charged several

of the clients an additional fee for including the false

dependents on their returns.

The defendant argues specifically that the Government failed to present sufficient evidence to establish that the defendant willfully included false dependents on Mr. Lomotey's 2010 and 2011 tax returns as charged in counts 16 and 17. The defendant points to Mr. Lomotey's trial testimony in the context of filing his 2009 tax return where he testified that he did not have a conversation with the defendant about dependents. (Tr. at 650.) Mr. Lomotey also testified that he did not recall telling IRS agents in 2013 that he had a discussion with the defendant about her charging a thousand dollars for a dependent. (Tr. at 662.) The defendant also asserts that Mr. Lomotey's testimony that his friend "Mike" accompanied him to meet the defendant and spoke to the defendant during various meetings provides an alternative explanation for the source of the false information.

However, Mr. Lomotey testified that he met with the defendant and that she prepared his 2010 and 2011 tax returns. The Government introduced the tax returns showing that the defendant prepared and filed them. (Gov. Exs. 113C, 113E.) Each tax return included a false dependent, Charles Mackey, who was listed as a nephew. Mr. Lomotey testified that this information was false and that he did not provide it to the defendant and he did not know where it came from. (Tr. at 654-56.) The Government also impeached Mr. Lomotey's trial

testimony that he did not discuss with IRS agents the fact that the defendant discussed the topic of dependents with Mr. Lomotey. (Tr. at 662.) An agent testified that Mr. Lomotey told the agent in September 2013 that the defendant "suggested to put the dependent on the tax return in order to increase the amount of [the] refund." (Tr. at 1101.) The Court instructed the jury that the agent's testimony could be used only to impeach the credibility of the inconsistent statement given in Court by Mr. Lomotey. (Tr. at 1101.)

The Government also offered the defendant's bank records which showed that the defendant deducted approximately $1,000 per tax return from Mr. Lomotey's tax refund. This $1,000 fee is consistent with the fee the defendant charged other clients for listing false dependents on their tax returns. (Tr. at 657- 62.) This evidence, combined with the evidence of the defendant's habitual use of false dependents on tax returns, was enough for the jury to find beyond a reasonable doubt that the defendant willfully aided and assisted in the filing of false or fraudulent tax returns for Mr. Lomotey as charged in counts 16 and 17. See Klausner, 80 F.3d at 63; Varanese, 417 F. App'x at 56.

Therefore, the plaintiff's motion for acquittal on counts 2-3, 7-14, and 16-17, is **denied**.

The Government presented sufficient evidence for the jury to find the defendant guilty of theft of Government funds and aggravated identity fraud: counts 18 and 19.

During trial, the Government called eleven witnesses to testify about tax returns filed in their names with the IRS. All eleven of the witnesses testified that they did not know how their information ended up on these tax returns and that they did not consent to their information being used to file the tax returns. The Government also entered into evidence all of the tax returns that had been filed in their names. Each of the returns showed that the defendant was the preparer or filer and listed the defendant's bank account or tax product account as the place to deposit the tax refunds.

The defendant asserts that the jury could not have reasonably found that the defendant intended to steal the refunds because the victims each testified that they did not know how their identities came to appear on the returns. This argument is unpersuasive. The tax returns presented to the jury showed the defendant's name, identification number, and bank account or tax product account. It was plain that it was the defendant who filed the returns, the returns used stolen identities, and the refunds from the returns went to the defendant. And, moreover, some of the tax returns listed

dependents whose names and social security numbers were used on other tax returns filed by the defendant. This was more than enough evidence for the jury to find the defendant guilty of one count of theft of Government funds and one count of aggravated identity theft.

Therefore, the plaintiff's motion for acquittal on counts 18 and 19 is **denied**.

## C.

The defendant contends that there was insufficient evidence for the jury to find the defendant guilty of filing false or fraudulent tax returns as charged in counts 20 and 21. This argument is also without merit.

At trial, the Government presented the defendant's individual 2013 and 2014 tax returns. On the 2013 tax return, Assatou Gikineh was listed as the defendant's dependent; on the 2014 tax return, Julio Bello and Joseph Milito were listed as the defendant's dependents. Both tax returns were signed by the defendant, listed her as the filer, and included her bank account or tax product account as the place to which a refund should be sent. At trial, there was testimony that Assatou, Julio, and Joseph did not live with nor depend on the defendant in 2013 or 2014, did not know that the defendant was using their information, and did not consent for the defendant to list them as dependents. (Tr. at 326-28, 340, 346, 761.)

14

The evidence was more than sufficient to sustain the jury's guilty verdict on these counts. The plaintiff's motion for acquittal on counts 20 and 21 is **denied.**

### III.

The defendant alternatively seeks a new trial.

### A.

The defendant first asserts that a new trial is warranted because the Court allowed the Government to present two charts that summarized information contained in tax returns filed by the defendant from 2010 through 2014. The defendant argues that this was a violation of Federal Rule of Criminal Procedure 16. The Court previously denied the defendant's motion for a mistrial on the same grounds. (Tr. at 1121-29.) The defendant's motion continues to be without merit.

Rule 16 of the Federal Rules of Criminal Procedure provides for discovery and inspection of various forms of information by the defendant from the Government and certain forms of reciprocal discovery from the defense. Among its obligations:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, [or] tangible objects, . . . if the item is within the government's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> >
> > (ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to
          the defendant.

Fed. R. Crim. P. 16

     "If the government violates [its Rule 16] disclosure

obligation, [courts have] broad discretion in fashioning a

remedy . . . , including ordering the exclusion of evidence."

United States v. Lee, 834 F.3d 145, 158 (2d Cir. 2016)

(quotation marks omitted).  Exclusion is proper where the

defendant shows that there would be "substantial prejudice."

United States v. Salameh, 152 F.3d 88, 130 (2d Cir. 1998) (per

curiam).  Substantial prejudice "mean[s] more than that the

statement was damaging to the defendant:  the defendant must

demonstrate that the untimely disclosure of the statement

adversely affected some aspect of [her] trial strategy."  United

States v. Adeniji, 31 F.3d 58, 64 (2d Cir. 1994).

     Toward the conclusion of the Government's case-in-chief,

the Government sought to introduced 47 tax returns that would

have shown that various persons whom the defendant listed on tax

returns that she filed and which were admitted into evidence

were also listed on other tax returns that she filed that had

not yet been admitted into evidence.  These tax returns had not

been provided to the defense prior to trial.  The Government

sought to offer these returns to counter the suggestions of the

defense through their examinations of various witnesses that

third persons might have come to the defendant with false
identities and sought to have the defendant file their returns
and that the defendant was the innocent victim of these
deceptions. The fact that the defendant used the same false
dependents on other returns made the defendant's argument less
plausible. Alternatively, the Government sought to offer
extracts from two charts showing the returns that the defendant
had filed with columns showing the dependents on other tax
returns that also appeared on the tax returns that were already
admitted into evidence. Those charts had been produced to the
defense about three weeks prior to trial but the Government had
not intended to offer them into evidence and they did not appear
on the exhibit list that the Government provided to the defense.

At trial, the Court denied the Government's request to
admit the 47 new tax returns because those tax returns had not
been produced prior to trial and the Government had represented
prior to trial that it had produced all of the tax returns that
it intended to introduce at trial. However, the Court permitted
the Government to introduce the charts, properly redacted to
include only the relevant entries, because that potential
evidence was in fact produced prior to trial. Ultimately, the
redacted charts included only 40 lines showing tax returns,
dependents, and identifying information. There was no argument
that the charts were not properly admissible in evidence under

17

Federal Rule of Evidence 1006 as a summary of voluminous documents. The only argument that the defendant pressed at trial was that the Government had violated Rule 16 and that the admission of the charts were therefore unfairly prejudicial to the defense. Those are the only arguments pressed on the current motion and they are no more valid today than they were at trial.

Initially, the defense has failed to show that the Government violated Rule 16. The charts were produced to the defense about three weeks before trial. They were not listed on the Government's exhibit list because the Government credibly affirmed that it had not intended to offer them. While that is sufficient to reject the defendant's claim, it is useful to note that exclusion of the charts would not have been justified even if the charts had been produced in an untimely fashion. These charts were plainly relevant as direct evidence of the defendant's alleged use of stolen identities because they showed the defendant's repeated use of false dependents on tax returns prepared and filed by the defendant. There was no fair argument of prejudice to the defendant from the admission of these charts. There are no apparent additional or different arguments the defense could have made at trial. Defense counsel did not argue to the jury that dependents did not appear on other tax returns prepared by the defendant. Moreover, the defense had

the two charts at issue before trial and could have seen the additional returns where the same dependents appeared. The value of this evidence comes from its probative value and not from any unfair advantage from the Government's effort to use this evidence at trial. Salameh, 152 F.3d at 130 ("'Substantial prejudice' means 'the prejudice resulting from the government's untimely disclosure of evidence, rather than the prejudice attributable to the evidence itself.'" (quoting United States v. Sanchez, 912 F.2d 18, 23 (2d Cir. 1990))).

At bottom, the defendant's argument is that relevant, probative evidence, of which the defendant had notice before trial, should have been excluded because the Government only appreciated the significance of the evidence as the trial unfolded. That is not unfair prejudice.

**B.**

The defendant also argues that she is entitled to a new trial because the Court should not have instructed the jury on the doctrine of conscious avoidance. The defendant does not argue that the charge was incorrect in any way.

A conscious avoidance instruction is appropriate if (1) "a defendant asserts the lack of some specific aspect of knowledge required for conviction," and (2) "the appropriate factual predicate for the charge exists, i.e., the evidence is such that a rational juror may reach the conclusion beyond a reasonable

doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." United States v. Coplan, 703 F.3d 46, 89 (2d Cir. 2012) (quoting Ferguson, 676 F.3d at 278). Both elements are satisfied in this case.

First, the defendant's principal defense at trial was that she did not know she was putting false information on the tax returns she filed. Indeed, the defendant's motions for acquittal or a new trial center almost entirely on her contention that the evidence at trial did not show she acted willfully or intentionally. Thus, the first element is satisfied.

Second, there was sufficient evidence for a rational juror to conclude beyond a reasonable doubt that, at the very least, the defendant was aware of a high probability that the dependents and taxpayer identities were false or stolen and that she consciously avoided confirming that fact. The jury was presented with a multitude of tax returns prepared by the defendant over the course of several years that included false dependents and stolen taxpayer identities. The recurring nature of false dependents on tax returns filed by the defendant indicates that the defendant was at least aware of the high probability that these listings were false. Moreover, the defendant was a professional tax preparer who had been

20

previously audited and notified of tax-return filing
deficiencies.

Accordingly, the requirements for a conscious avoidance
instruction are satisfied and the instruction to the jury on
conscious avoidance was wholly appropriate.

## C.

Finally, the defendant argues that the Court should grant a
new trial because the Government's witnesses were not credible.
The defendant argues that the client witnesses were
"unquestionably biased" because they testified pursuant
nonprosecution agreements. (Def.'s Mem. at 19.) However,
"trial courts 'must defer to the jury's resolution of the weight
of the evidence and the credibility of the witnesses.'" United
States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (citation
omitted). "It is only where exceptional circumstances can be
demonstrated that the trial judge may intrude upon the jury
function of credibility assessment." Id. A defendant is only
entitled to a new trial when, based on an objective evaluation
of the totality of the case, "it would be a manifest injustice
to let the guilty verdict stand." Id. (quoting United States v.
Reed, 875 F.2d 107, 114 (7th Cir. 1989)). This case does not
present the "exceptional circumstances" necessary to vacate the
jury's credibility determination. Indeed the witnesses were
credible.

*          *          *

Therefore, the defendant's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure is **denied**.

## IV.

The defendant also wrote a letter to the Court pro se. In the letter, the defendant makes a number of claims about the evidence used against her at trial. The defendant alleges that various witnesses testified untruthfully and that the Government presented false tax returns and that if only the defendant had access to her computer records that the Government seized, she could have refuted the Government's evidence. In particular, the plaintiff claims that Mr. Gikineh committed perjury and that the IRS fabricated entries on tax returns used as evidence against her. The Government responded to the defendant's letter and denied each allegation.

The Court construes the defendant's letter as a request for a new trial. However, none of the defendant's claims warrant a new trial.

"In order to be granted a new trial on the ground that a witness committed perjury, the defendant must show that '(i) the witness actually committed perjury . . . ; (ii) the alleged perjury was material . . . ; (iii) the government knew or should have known of the perjury at [the] time of trial . . . ; and (iv) the perjured testimony remained undisclosed during trial

. . . .'" United States v. Josephberg, 562 F.3d 478, 494 (2d

Cir. 2009) (quoting United States v. Zichettello, 208 F.3d 72,

102 (2d Cir. 2000)). To prevail on a motion for a new trial

based on Government misconduct or fabricated evidence, the

defendant must provide more than just speculation. See United

States v. Boyd, 401 F. App'x 565, 566 (2d Cir. 2010) (affirming

denial of Rule 33 motion where defendant's claim that the

Government had fabricated evidence was unsupported, the

defendant did not provide any basis for his belief, and the

claim was contradicted by evidence at trial); United States v.

Gilbert, 668 F.2d 94, 96 (2d Cir. 1981) (affirming denial of

Rule 33 motion where defendant's claim of Government misconduct

was based on "unsupported speculation").

The defendant has not made a sufficient showing to warrant

a new trial. The defendant claims that Mr. Gikineh lied when he

testified that the defendant prepared his tax return only for

tax year 2012. The plaintiff attached a printout of a Capital

One account statement that supports the defendant's contention

that she prepared Mr. Gikineh's tax returns for 2013 and that he

received a refund in 2014. But Mr. Gikineh did not testify at

trial that the defendant prepared his taxes for 2012. Mr.

Gikineh only testified that the defendant prepared his taxes on

one occasion and that it was "maybe five years ago." (Tr. at

337.) In any event, it was for the jury to determine Mr.

23

Gikineh's credibility.  United States v. McCourty, 562 F.3d 458, 475-76 (2d Cir. 2009) ("[C]ourts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, [i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." (quotation marks omitted)).

The defendant's claim that the IRS deleted or altered entries on tax returns is also without basis.  The defendant does not provide any support other than unsubstantiated allegations, and the Government has represented that none of the tax returns were altered.  There is no reason to suspect that to be untrue.  While the defendant claims that she would have been able to show the records were false if only she had access to her records, the Government represents that, on November 3, 2015, it produced to the defense the electronic records seized from the defendant's office at the time of her arrest, and the defense plainly had ample time to review those records prior to trial.

The defendant makes several other allegations, but they are similarly unfounded and do not warrant a new trial.  See Boyd, 401 F. App'x at 566.

**CONCLUSION**

The defendant's motions for acquittal or a new trial are

**denied.** The Court has considered all of the arguments raised by

the parties. To the extent not specifically addressed, the

arguments are either moot or without merit.

The Clerk of Court is directed to close docket number 200.

**SO ORDERED.**

Dated:    **New York, New York**
          **February 4, 2019**

                                                  John G. Koeltl
                                         United States District Judge