UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.

REBECCA BAYUO,

          Defendant.

15 Cr. 576 (JGK)

Judge John G. Koeltl

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REBECCA BAYUO'S EMERGENCY REQUEST FOR INDICATIVE RELIEF REGARDING EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
Anne E. Railton (AR0618)
Valerie A. Haggans (VK1115)
Lindsay E. Hoyle (LH1245)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Courtney D. Orazio (*pro hac vice*)
100 Northern Avenue
Boston, Massachusetts 02210
(617) 570-1634

*Attorneys for Defendant Rebecca Bayuo*

May 22, 2020

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

PROCEDURAL BACKGROUND........................................................................................ 2

ARGUMENT ......................................................................................................................... 4

I.      Applicable Law ........................................................................................................... 4

        A.      Indicative Relief Under Federal Rule of Criminal Procedure 37 ......................... 4

        B.      Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i) .............................. 5

                1.      The Issue of Exhaustion Does Not Preclude the Court from Issuing
                        an Indicative Ruling. ................................................................................. 6

                2.      Exhaustion Is Not Required Under These Unique Circumstances. ........... 7

II.     There are Extraordinary and Compelling Circumstances Justifying Ms. Bayuo's
        Release. ...................................................................................................................... 11

        A.      Ms. Bayuo's Diabetes and High Blood Pressure Place Her At High Risk of
                Severe Illness or Death Should She Contract COVID-19. ................................. 11

        B.      The Spread of COVID-19 In Prisons Is Uncontested and Uncontrolled. ........... 13

        C.      Ms. Bayuo's Immediate Release to Home Confinement Presents No
                Danger to the Community, and Is Otherwise Consistent with Federal
                Sentencing Goals. .............................................................................................. 20

                1.      Ms. Bayuo's Immediate Release Is Consistent With the Section
                        3553 Factors. ........................................................................................... 20

                2.      Ms. Bayuo's Immediate Release Is Also Consistent With U.S.S.C.
                        § 1B1.13, To the Limited and Non-Binding Extent It Applies............... 22

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowen v. City of New York,*
  476 U.S. 467 (1986)........................................................................................................8

*Samy v. United States,*
  No. CR 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020).....................................25

*United States v. Almontes,*
  No. 3:05-CR-58 (SRU), 2020 WL 1812713 (D. Conn. Apr. 9, 2020) ...................................23

*United States v. Amarrah,*
  No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) .........................................19, 24

*United States v. Asaro,*
  No. 17-CR-127 (ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) ................................19

*United States v. Atkinson,*
  No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585 (D. Nev. Apr. 17, 2020) ..................19, 25

*United States v. Atwi,*
  No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) ...........................................25

*United States v. Bayuo,*
  No. 19-1854 (2d Cir.)..................................................................................... *passim*

*United States v. Ben-Yhwh,*
  No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020)..........................19, 25

*United States v. Bess,*
  No. 16-CR-156, 2020 WL 1940809 (W.D.N.Y. Apr. 22, 2020) .........................................8, 9

*United States v. Burrill,*
  No. 17-CR-00491-RS-1, 2020 WL 1846788 (N.D. Cal. Apr. 10, 2020).............................19

*United States v. Coles,*
  No. 00-CR-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) .......................................7, 25

*United States v. Cosgrove,*
  No. CR15-230-RSM, 2020 WL 1875509 (W.D. Wash. Apr. 15, 2020) ...............................25

*United States v. El-Hanafi,*
  10-cr-162 (KMW), Order, Dkt. Entry 252 (S.D.N.Y. May 19, 2020)....................................24

*United States v. Foreman*,
   No. 3:19-CR-62 (VAB), 2020 WL 2315908 (D. Conn. May 11, 2020)................................24

*United States v. Gentille*,
   No. 19 Cr. 590 (KPF), 2020 WL 1814158 (S.D.N.Y. Apr. 9, 2020) ....................................5, 6

*United States v. Gorai*,
   No. 218CR220JCMCWH, 2020 WL 1975372 (D. Nev. Apr. 24, 2020)..............................25

*United States v. Guzman Soto*,
   No. 1:18-CR-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020)...................................23

*United States v. Hammond*,
   No. CR 02-294 (BAH), 2020 WL 1891980 (D.D.C. Apr. 16, 2020) ....................................25

*United States v. Haney*,
   No. 19 Cr. 541 (JSR), 2020 WL 2319323 (S.D.N.Y. Apr. 13, 2020)................................7, 9

*United States v. Hernandez*,
   No. 18 CR. 834-04 (PAE), 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020)...............................24

*United States v. Howard*,
   No. 4:15-CR-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020)...................................24

*United States v. Mahan*,
   No. 1:19-CR-00233-DCN, 2020 WL 1846789 (D. Idaho Apr. 10, 2020)............................25

*United States v. Martin*,
   No. 18-CR-834-7 (PAE), 2020 WL 1819961 (S.D.N.Y. Apr. 10, 2020) ...............................4

*United States v. McCarthy*,
   No. 3:17-CR-0230 (JCH), 2020 WL 1698732 (D. Conn. Apr. 8, 2020) ..............................25

*United States v. McIndoo*,
   No. 1:15-Cr-00142 EAW, 2020 WL 2201970 (W.D.N.Y. May 6, 2020) ...............................8

*United States v. Mel*,
   No. CR TDC-18-0571, 2020 WL 2041674 (D. Md. Apr. 28, 2020) .....................................23

*United States v. Moseley*,
   18-2003 (2d Cir. Apr. 22, 2020) .....................................................................................2, 3

*United States v. Moseley*,
   No. 16 Crim. 79 (ER), 2020 WL 1911217 (S.D.N.Y. Apr. 20, 2020).............................4, 5, 6

*United States v. Pabon*,
   No. CR 17-165-1, 2020 WL 2112265 (E.D. Pa. May 4, 2020) ..............................................24

*United States v. Park*,
No. 16-Cr-473 (RA), 2020 WL 1970603 (S.D.N.Y. Apr. 24, 2020)..................................8, 19

*United States v. Pena*,
No. 15-Cr-551 (AJN), 2020 WL 2301199 (S.D.N.Y. May 8, 2020)...................................8, 9

*United States v. Perez*,
No. 17 Cr. 513-3 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) ...................................10

*United States v. Poulios*,
No. 2:09-Cr-109, 2020 WL 1922775 (E.D. Va. Apr. 21, 2020)..........................................8, 9

*United States v. Raia*,
954 F.3d 594 (3d Cir. 2020)...................................................................................................4

*United States v. Redd*,
No. 1:97-CR-00006-AJT, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020)...............................22

*United States v. Rivera*,
No. 86 Cr. 1124 (JFK), 2020 WL 2094094 (S.D.N.Y. May 1, 2020) .................................1, 13

*United States v. Rodriguez*,
No. 2:03-CR-00271-AB-1, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020).........................18, 22

*United States v. Russo*,
No. 16-CR-441 (LJL), 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020)........................... *passim*

*United States v. Sawicz*,
No. 08-Cr-287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020).........................8, 10, 24

*United States v. Scparta*,
No. 18-CR-578 (AJN), 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020)..........................8, 9, 24

*United States v. Skelos*,
No. 15-CR-317 (KMW), 2020 WL 2508739 (S.D.N.Y. May 15, 2020)..................................4

*United States v. Smith*,
No. 12 Cr. 133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) ...............................7, 10

*United States v. Ullings*,
No. 1:10-CR-00406, 2020 WL 2394096 (N.D. Ga. May 12, 2020)......................................24

*United States v. Valencia*,
No. 15 Cr. 163 (AT), 2020 WL 2319323 (S.D.N.Y. May 11, 2020)...................................7, 9

*United States v. Valencia*,
No. 15 Cr. 163 (AT), 2020 WL 1974233 (S.D.N.Y. Apr. 24, 2020)........................................5

*United States v. Vigna*,
  No. SI 16-CR-786-3 (NSR), 2020 WL 1900495 (S.D.N.Y. Apr. 17, 2020) ..........................5

*United States v. Wen*,
  No. 6:17-Cr-06173 EAW, 2020 WL 1845104 (W.D.N.Y. Apr. 13, 2020) .....................10, 24

*Valentine v. Collier*,
  No. 19A1034, 2020 WL 2497541 (May 14, 2020) (J. Sotomayor)........................................10

**Statutes**

18 U.S.C. § 641 ..........................................................................................................................2

18 U.S.C. § 1028A ......................................................................................................................2

18 U.S.C. § 3142(i) ...................................................................................................................12

18 U.S.C. § 3553(a) ...............................................................................................................6, 20

18 U.S.C. § 3582(c) ...........................................................................................................*passim*

26 U.S.C. § 7206........................................................................................................................2

First Step Act of 2018, Pub. L. 115-391, § 603, 132 Stat. 5194, 5239 (2018) ...............5, 6, 22, 23

U.S.S.G. § 1B1.13...........................................................................................................22, 23, 24

**Other Authorities**

Fed. R. App. P. 12.1 ............................................................................................................*passim*

Fed. R. Crim. P. 37 .............................................................................................................*passim*

**INTRODUCTION**

As a result of the COVID-19 pandemic that is currently spreading exponentially through this country's prisons, and Ms. Bayuo's own poor heath, Ms. Bayuo seeks a modification of her sentence and immediate release to home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). As the Court is aware, Ms. Bayuo suffers from many pre-existing health conditions, including diabetes and high blood pressure, which are precisely the conditions that the Centers for Disease Control ("CDC") has said put individuals at a higher risk of severe illness or death from COVID-19. *See* CDC, COVID-19, Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 21, 2020). Courts in this Circuit and around the country are in agreement that, for "medically 'high-risk' defendants," like Ms. Bayuo, the COVID-19 pandemic presents "extraordinary and compelling circumstances" supporting release. *United States v. Rivera*, No. 86 Cr. 1124 (JFK), 2020 WL 2094094, at *5 (S.D.N.Y. May 1, 2020) (collecting cases).

Ms. Bayuo's case is currently on appeal before the Second Circuit Court of Appeals. *United States v. Bayuo*, No. 19-1854 ("*Bayuo* Appeal") (2d Cir.). Oral argument is scheduled for May 28, 2020. *Bayuo* Appeal, Notice of Hr'g Date, Dkt. Entry 70 (2d Cir. Apr. 24, 2020). Pursuant to Federal Rule of Criminal Procedure 37, Ms. Bayuo asks that the Court provide indicative relief with respect to her motion for compassionate release and "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a)(3). In the event the Court orders such relief, Ms. Bayuo will immediately notify the Second Circuit under Federal Rule of Appellate Procedure 12.1, and seek limited remand to this Court for disposition of the motion. Fed. R. Crim P. 37(b) and (c),

Fed. R. App. P. 12.1; *see also United States v. Moseley*, 18-2003, Order, Dkt. Entry 135 (2d Cir. Apr. 22, 2020) (remanding to district court for decision on compassionate release motion).

## PROCEDURAL BACKGROUND

On November 1, 2018, Ms. Bayuo was found guilty of twelve counts of aiding and abetting in the preparation of false and fraudulent U.S. individual income tax returns in violation of 26 U.S.C. § 7206(2) (Counts 2-3, 7-14, and 16-17 of the 21-Count Second Superseding Indictment), one count of theft of government funds in violation of 18 U.S.C. § 641 (Count 18), one count of aggravated identity theft in violation of 18 U.S.C. §§ 1028A (Count 19), and two counts of subscribing to false individual income tax returns in violation of 26 U.S.C. § 7206(1) (Counts 20-21). *United States v. Bayuo*, 15 Cr. 576 (JGK) ("*Bayuo*"), Judgment, Dkt. Entry 250 (Jun. 13, 2019).[1]   On May 9, 2019, this Court imposed a term of imprisonment of 36 months, comprised of 12 months for Counts 2-3, 7-14, 16-18, and 20-21, and a 24-month mandatory minimum sentence for Count 19, to run consecutively. *Bayuo* Sentencing Hr'g Tr. 33:15-23 (May 9, 2019).

At sentencing, the court took note of Ms. Bayuo's medical issues, recommending "that the defendant be imprisoned in an institution that can care for her medical conditions." *Id.* at 33:25-34:1.   The Court further ordered that Ms. Bayuo be allowed to voluntarily surrender to her designated facility. *Id.* at 34:2-4.   Ms. Bayuo was designated to FCI Aliceville in August 2019, and did so surrender there later that month.   Ms. Bayuo has served approximately 9 months of her 36-month sentence, and according to the Bureau of Prisons ("BOP") website is due to be released in March 2022.   Federal Bureau of Prisons, Inmate Locator, Inmate Reg. No. 72435-054, https://www.bop.gov/inmateloc/ (last visited May 21, 2020).

---

[1]      The jury returned not guilty verdicts with respect to Counts 1, 6 and 15 of the Second Superseding Indictment. *Id.*  The Government did not pursue Counts 4 and 5 at trial, and they were ultimately dismissed. *Bayuo* Trial Tr. 1215:4-5 (Oct. 29, 2018).

As the spread of COVID-19 in prisons throughout the country became imminent, on Ms. Bayuo's behalf, and at her direction, counsel submitted a letter request to Warden P. Bradley of FCI Aliceville asking Warden Bradley to direct the BOP to move the Court for compassionate release.  The letter was submitted via email on Friday, May 8, 2020 and via first class mail on Saturday, May 9, 2020.  A copy of the letter that was submitted to Warden Bradley and a copy of the cover email attaching that letter are attached to this motion as Exhibits A & B, respectively. As of the date of this motion, neither counsel nor Ms. Bayuo has received any response from Warden Bradley or anyone else at the BOP.

As explained above, on June 24, 2019, Ms. Bayuo filed a notice of appeal of her convictions to the United States Court of Appeals for the Second Circuit.  *Bayuo*, Notice of Appeal, Dkt. Entry 252 (Jun. 24, 2019).  Ms. Bayuo's appeal is fully briefed, and oral argument is scheduled for May 28, 2020.  *Bayuo* Appeal, Notice of Hr'g Date, Dkt. Entry 70 (2d Cir. Apr. 24, 2020).  As Ms. Bayuo's case is currently under the jurisdiction of the Second Circuit, this Court can provide only indicative relief in response to this motion.  Accordingly, Ms. Bayuo asks that this Court "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Crim. P. 37(a)(3).  If the Court so orders, Ms. Bayuo will immediately notify the Second Circuit under Federal Rule of Appellate Procedure 12.1, and seek limited remand to this Court for disposition of the motion.  Fed. R. Crim. P. 37(b) and (c), Fed. R. App. P. 12.1; *see also Moseley*, 18-2003, Order, Dkt. Entry 135 (granting motion for limited remand to district court for purposes of decision on compassionate release motion).

# ARGUMENT

## I.    Applicable Law

### A.    Indicative Relief Under Federal Rule of Criminal Procedure 37

Under Federal Rule of Criminal Procedure 37, a defendant may move for an indicative ruling on a motion for relief before a district court, such as Ms. Bayuo's instant motion for compassionate release, even though an appeal is pending before the Second Circuit.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting the Court of Appeals could "remand the case to the District Court while retaining jurisdiction over the [] appeal under Rule 12.1," which would "allow the District Court to consider [the defendant's] compassionate-release request in the first instance"); *United States v. Moseley*, No. 16 Crim. 79 (ER), 2020 WL 1911217, at *1 (S.D.N.Y. Apr. 20, 2020) (finding a "substantial issue" is raised by the COVID-19 pandemic and reserving decision pending the Second Circuit granting limited remand to decide the motion for compassionate release); *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *1-2 (S.D.N.Y. Apr. 10, 2020) (finding authority to issue an indicative ruling, but denying motion on the merits under Rule 37 because defendant, a high-ranking gang member, posed a danger to the safety of others).

Rule 37 states that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial  issue."  Fed. R. Crim. P. 37(a); *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020).  The advisory committee notes list "motions under 18 U.S.C. § 3582(c)" as one of three types of motions for which the drafters "anticipate[ ] that Criminal Rule 37 will be

used primarily if not exclusively." Fed. R. Crim. P. 37 Advis. Comm. Notes (2012).  Accordingly,

this Court, in its discretion, may "state either that it would grant the motion if the court of appeals

remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a)(3)*;*

*see United States v. Vigna*, No. SI 16-CR-786-3 (NSR), 2020 WL 1900495, at \*4 (S.D.N.Y. Apr.

17, 2020).  If this Court were to so rule, Ms. Bayuo will "promptly notify the circuit clerk under

Federal Rule of Appellate Procedure 12.1," and ask the Second Circuit to remand the case to this

Court for the limited purpose of deciding Ms. Bayuo's motion for compassionate release.  *See* Fed.

R. Crim. P. 37(b-c).

Courts in the this district have recently ruled that compassionate release motions based on

the COVID-19 pandemic raise a "substantial issue" warranting further consideration under Federal

Rule of Criminal Procedure 37.  *See, e.g.*, *Moseley*, 2020 WL 1911217, at \*1 (finding a "substantial

issue" is raised by the COVID-19 pandemic); *see also United States v. Valencia*, No. 15 Cr. 163

(AT), 2020 WL 1974233 (S.D.N.Y. Apr. 24, 2020) (finding that a COVID-related motion

under Section 3582(c) "raise[d] a substantial issue" under Rule 37).  For the reasons argued below,

Ms. Bayuo is entitled to compassionate release.  She therefore asks the Court to issue an indicative

ruling stating that it would grant Ms. Bayuo's motion if the Second Circuit were to remand the

case for that purpose, or in the alternative, state that Ms. Bayuo's motion raises a "substantial

issue" that warrants further consideration on remand.  *See* Fed. R. Crim. P. 37(a)(3).

### B.      Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)

Following amendments made by § 603 of the First Step Act of 2018, Pub. L. 115-391, §

603, 132 Stat. 5194, 5239 (2018), defendants may now move for early release from prison for

"extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).  *See United States v.*

*Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *2 (S.D.N.Y. Apr. 9, 2020).  This provision, often referred to as the compassionate release provision, was amended by the First Step Act of 2018 to permit defendants, and not merely the BOP, to make such motions under certain circumstances.  *See* First Step Act of 2018, Pub. L. 115-391, § 603, 132 Stat. 5194, 5239 (2018); *see also Gentille*, 2020 WL 1814158, at *2; *United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, at *2 (S.D.N.Y. Apr. 14, 2020).

Accordingly, Section § 3582(c)(1)(A) now authorizes courts to modify an otherwise-final term of imprisonment, in relevant part, "upon motion of the defendant after [she] has fully exhausted all administrative rights . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," if the requested early release is consistent with the § 3553(a) factors and the Sentencing Commission's policy statements. § 3582(c)(1)(A).  As explained in Section II.C, *infra*, each of these is met here.

      1.    <u>The Issue of Exhaustion Does Not Preclude the Court from Issuing an Indicative Ruling.</u>

Ms. Bayuo submitted her letter request for compassionate release to Warden Bradley of FCI Aliceville via email on May 8, 2020.  *See* Exhibits A & B.  The 30-day waiting period established by the statute will elapse on June 7, 2020.  While the waiting period has not yet run as of the date of this motion, Ms. Bayuo is asking, at this juncture, only for an indicative ruling by this Court pursuant to Federal Rule of Criminal Procedure 37; she is not asking, and cannot ask, this Court to grant her motion outright unless and until the Second Circuit issues a limited remand to this Court for that purpose.  Fed. R. Crim. P. 37; *see Moseley*, 2020 WL 1911217, at *1.  While Ms. Bayuo is hopeful that both this Court and the Second Circuit will issue timely rulings in response to her motions, she is aware that the briefing of these issues will take time.  As a result, acting now by seeking an indicative ruling is prudent given the rapidly escalating pandemic in this

country's prisons, including at FCI Aliceville. *See infra*, Section II.B. More importantly, even though Ms. Bayuo submits that, for the reasons articulated in Section I.B.2, *infra*, exhaustion by way of expiration of the 30-day waiting period is not required in these unique circumstances, given the limited nature of Ms. Bayuo's instant request, this Court can provide indicative guidance without confronting any potential concerns regarding exhaustion.

2.    Exhaustion Is Not Required Under These Unique Circumstances.

"Even where exhaustion is seemingly mandated by statute . . . the requirement is not absolute." *Russo*, 2020 WL 1862294, at *5 (holding that, "[d]espite the mandatory nature of [the statute's] exhaustion requirement," the exhaustion bar is "not jurisdictional" and can therefore be waived); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (citing cases). That is the case with § 3582(c)(1)(A)'s exhaustion provision. *See United States v. Valencia*, No. 15 Cr. 163 (AT), 2020 WL 2319323, *4 (S.D.N.Y. May 11, 2020) (concluding that "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late" (quoting *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 2319323, at *2 (S.D.N.Y. Apr. 13, 2020)). Although frequently referred to as the "exhaustion requirement," exhaustion is not strictly required before a court may act on a motion. *See Valencia*, 2020 WL 1974233, *3 ("The Court concludes that Section 3582(c)(1)(A) does not impose a jurisdictional requirement—in other words, a defendant's failure to exhaust does not deprive the Court of the power to hear his case altogether."); *United States v. Coles*, No. 00-CR-20051, 2020 WL 1976296, at *4 (C.D. Ill. Apr. 24, 2020). Rather, the exhaustion requirement is a *non*jurisdictional "claim-processing rule" that merely "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain

specified times." *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *3 (W.D.N.Y. Apr. 22, 2020) (quoting *Henderson ex rel Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).[2]  Such claim processing rules are "subject to certain [equitable] exceptions . . . [including] forfeiture and waiver," *id.*, and "judicial exception."  *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *5-6 (S.D.N.Y. Apr. 20, 2020).

Thus, courts can waive the exhaustion provision where "(1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice." *United States v. Poulios*, No. 2:09-Cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020); *see also Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (irreparable injury justifies the waiver of statutory exhaustion requirements where "the ordeal of having to go through the administrative process may trigger a severe medical setback"); *United States v. Sawicz*, No. 08-Cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) ("undue delay, if it in fact results in catastrophic health consequences, can justify [the court's waiver of] an administrative exhaustion requirement for any of those three reasons") (internal citations omitted).

As the COVID-19 pandemic has developed, courts have recognized that we are faced with "novel and dangerous times.  Every day—indeed, every minute—may count, particularly for [defendants who are] at a high-risk from COVID-19 and currently live[] in a facility with a documented outbreak and limited means of protection."  *United States v. Park*, No. 16-Cr-473

---

[2]      *See also United States v. Pena*, No. 15-Cr-551 (AJN), 2020 WL 2301199, at *2 (S.D.N.Y. May 8, 2020) ("the First Step Act's exhaustion requirement is not jurisdictional, but instead a claims-processing rule"); *United States v. McIndoo*, No. 1:15-Cr-00142 EAW, 2020 WL 2201970, at *6 (W.D.N.Y. May 6, 2020) (finding "§ 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule, not a jurisdictional prerequisite" and noting "[d]istrict courts in this Circuit have recognized that § 3582(c)(1)(A) is not jurisdictional and can be waived, and the Government itself has taken that position in other cases" (citation omitted)).

(RA), 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020).  During this pandemic, "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late."  *See Valencia*, 2020 WL 2319323, at *4.

Accordingly, in recent weeks, a growing number of courts are finding that "[t]he COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement." *Poulios*, 2020 WL 1922775, at *1.  "Indeed, were there ever a time to consider whether equity compels excusal of a rule intended merely to 'promote the orderly progress of litigation,' it certainly is now."  *Bess*, 2020 WL 1940809, at *7 (quoting *Henderson*, 562 U.S. at 435). "Congress cannot have intended the 30-day waiting period . . . to rigidly apply in the highly unusual situation in which the nation finds itself today."  *Haney*, 2020 WL 1821988, at *3.  As the court in *Russo* explained,

> when the movant has been pursuing his rights diligently, the BOP has not been able to satisfy its obligation to act expeditiously (including through appeals) or to assure the Court it can do so, and an extraordinary circumstance, not of the movant's own making, stands as a substantial obstacle to him obtaining the meaningful judicial review that Congress intended, the Court can exercise the power Congress has given it.

*Russo*, 2020 WL 1862294, at *7;[3] *see also Haney*, 2020 WL 1821988, at *4 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the vulnerable defendant contracting COVID-19).

---

[3]     *See also, e.g.*, *Pena*, 2020 WL 2301199, at *3 ("Without the application of equitable exceptions, prisoners bringing compassionate-release motions due to COVID-19 might *never* obtain timely judicial review before the virus takes its toll."); *Bess*, 2020 WL 1940809, at *7 ("[T]he COVID-19 pandemic presents 'extraordinary circumstances' that are 'beyond [Bess's] control.'  Were this Court not to excuse Bess's failure to exhaust, the outcome easily could be fatal."); *Scparta*, 2020 WL 1910481, at *8 ("[T]he First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is

Consistent with this line of cases, the Supreme Court similarly weighed in on the exhaustion debate, stating that it has "made clear that the PLRA requires exhaustion only of 'available' judicial remedies" and reasoning that "when a grievance procedure is a 'dead end'— when 'the facts on the ground' indicate that the grievance procedure provides no possibility of relief—the procedures may well be 'unavailable.'" *Valentine v. Collier*, No. 19A1034, 2020 WL 2497541, *3 (May 14, 2020) (J. Sotomayor). The Court stated that, "if a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid–19, the procedures may be 'unavailable' to meet the plaintiff's purposes." *Id*. Such is the case here where the BOP has shown that it is unable to expeditiously respond to prisoners' petitions for early release. *See, e.g.*, *Russo*, 2020 WL 1862294, at *7 (noting that "the BOP has not been able to satisfy its obligation to act expeditiously (including through appeals) or to assure the Court it can do so").

For the foregoing reasons, exhaustion should not preclude the Court from considering the merits of Ms. Bayuo's motion for compassionate release.

---

amenable to equitable exceptions. And here, waiting for Mr. Scparta to exhaust his remedies would both be futile and cause him irreparable harm."); *Smith*, 2020 WL 1849748, at *4 (determining that defendant's "advanced age and compromised health, combined with his status as a BOP-designated 'high-risk' inmate in a facility with confirmed cases of COVID-19, justifies waiver of the exhaustion requirement"); *United States v. Wen*, No. 6:17-Cr-06173 EAW, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); *Sawicz*, 2020 WL 1815851, at *2; *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) ("Zukerman's advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement."); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422 at *1 (S.D.N.Y. Apr. 1, 2020) ("Perez's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic. And the Court agrees with the parties that this threat also constitutes an extraordinary and compelling reason to reduce Perez's sentence to time served.").

II.     **There are Extraordinary and Compelling Circumstances Justifying Ms. Bayuo's Release.**

      A.     **Ms. Bayuo's Diabetes and High Blood Pressure Place Her At High Risk of Severe Illness or Death Should She Contract COVID-19.**

Ms. Bayuo is 49 years old, and extremely vulnerable to severe illness and death from COVID-19.  Ms. Bayuo has suffered from diabetes since approximately 2005, and high blood pressure since approximately 2015, as wells as several conditions secondary to those primary conditions. *Bayuo* Presentence Investigation Report (filed Mar. 14, 2019) ("PSR") at ¶ 70.  At the time of her sentencing in May 2019, Ms. Bayuo was taking approximately 15 different prescription medications, and using 5 different medical devices to manage her conditions.  *Id.*  At her sentencing hearing, the Court specifically recognized that Ms. Bayuo "suffers from numerous medical problems and takes numerous medications, all of which will mean that imprisonment will cause unusual burdens" for her.  *Bayuo* Sentencing Hr'g Tr., 25:17-19 (May 9, 2019).

Indeed, as the Court is aware, Ms. Bayuo suffered from a diabetes-related medical episode that resulted in her hospitalization only days prior to the sentencing hearing, an event which concerned the Court enough to comment on defense counsel's obligation to ensure that she was under proper medical care.  Specially, after defense counsel explained that "a week or so ago, Ms. Bayuo experienced blood pressure issues, and passed out in the streets of New York City and woke up disoriented in Beth Israel Hospital," *id.* at 12:18-21, the Court said "I'm troubled by the fact that the defendant had an episode described as low blood pressure which caused fainting.  The defendant should receive medical care."  *Id.* 28:25-29:3; *see also* 18:17-19 (Ms. Bayuo herself explained that "I almost died the other day.  I don't know what happened.  When I realized I was in the emergency, they took me to the hospital, my [blood] sugar was high, my [blood] pressure almost 300.").  The Court further "urge[d] current defense counsel to make sure that the defendant sees a doctor," stating:

> [Ms. Bayuo is] plainly under medical care, she takes many different medications, but she needs to see a medical professional to check her current medications. I appreciate that the defendant was hospitalized, is not hospitalized at the moment, but, again, I urge defense counsel to assure that the defendant sees a doctor. I assume that that has been done when the defendant was hospitalized. To the extent that further medical attention is called for, I view it as part of the defense counsel's continuing representation of the defendant.

*Id.* 29:5-18. This incident is evidence both of Ms. Bayuo's longstanding medical issues, and of how difficult it is for Ms. Bayuo to manage her conditions.

There is no question that Ms. Bayuo's diabetes, in particular, places her at higher risk for an extreme negative outcome, should she contract COVID-19. As a district court in Minnesota recently found:

> It is uncontested that people suffering from diabetes are at a substantially greater risk for serious complications from coronavirus than those who do not have the illness. According to the American Diabetes Association, not only are people with diabetes at a greater risk of "experiencing serious complications from COVID-19," but people who experience blood sugar fluctuations, [as Ms. Bayuo unquestionably did in the weeks leading up to her May 2019 sentencing hearing], are at an even higher risk.[4] Although the enhanced risk has been thus far difficult to quantify, a large-scale study of cases from China, summarized in the JAMA Network, an online publication of the Journal of the American Medical Association, suggested that while the overall fatality rate from COVID-19 was 2.3%, the fatality rate was 7.3% for people suffering from diabetes.[5] There is also some suggestion in the literature that people with diabetes might be at a higher risk of contracting the virus in the first place, though this could be explained by the reality that people who show more severe symptoms are more likely to be tested and have their coronavirus-positive status confirmed.

*United States v. Ramirez-Rodriguez*, 20 Cr. 28 (JRT / KMM), Order, Dkt. Entry 42, at 3-4 (D. Minn. Apr. 14, 2020) (granting release pursuant to 18 U.S.C. § 3142(i)).

---

[4]     American Diabetes Association, COVID-19, *Do people with diabetes have a higher chance of experiencing serious complications from COVID-19?*, https://diabetes.org/covid-19-faq (last visited May 21, 2020).

[5]     Zunyou Wu et. al., *Characteristics of and Important Lessons From the Coronavirus Disease 2019 (COVID-19) Outbreak in China*, JAMA Network, Feb. 24, 2020, at *2, https://jamanetwork.com/journals/jama/fullarticle/2762130 (last visited May 21, 2020).

Put succinctly, Ms. Bayuo "is like other medically 'high-risk' defendants in this Circuit who suffer from diabetes and [to] whom courts have recently granted release." *United States v. Rivera*, No. 86 Cr. 1124 (JFK), 2020 WL 2094094, at *5 (S.D.N.Y. May 1, 2020) (collecting cases); *see also United States v. Musumeci*, 07 Cr. 402 (RMB), Decision & Order, Dkt. Entry 58, at *5 (S.D.N.Y. Apr. 28, 2020) (granting compassionate release where defendant's "serious medical conditions," including diabetes and high blood pressure, "are especially susceptible to coronavirus infection," and as a result defendant is "clearly at a high risk of severe illness or death if he were to contract COVID-19").

There is no question that, given her medical history, COVID-19 could kill Ms. Bayuo.

**B.      The Spread of COVID-19 In Prisons Is Uncontested and Uncontrolled.**

There is similarly no question that Ms. Bayuo faces a far greater risk of contracting COVID-19 in prison than if she were to be released.  As the court in *United States v. Ramirez-Rodriguez* stated, "[i]t is uncontested that the world is currently facing a devastating global pandemic," and that "COVID-19 has been spreading in jails and prisons around the country." *Ramirez-Rodriguez* Order at 4.  As the following charts make clear, the COVID-19 pandemic is growing exponentially within the BOP:

**TABLE 1: BOP-Reported Positive Tests for COVID-19 Nationwide[6]**

| Date | Number of Positive Inmates | Number of Positive Staff | Number of Inmate Deaths | Total BOP Cases |
|---|---|---|---|---|
| 3/20/2020 | 0 | 2 | 0 | 2 |
| 3/21/2020 | 1 | 2 | 0 | 3 |
| 3/22/2020 | 1 | 2 | 0 | 3 |
| 3/23/2020 | 3 | 3 | 0 | 6 |

---

[6]      *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://bop.gov/coronavirus/index.jsp (last visited May 21, 2020).  The column for "Total BOP Cases" refers to the number for both BOP inmates and staff who have tested positive for COVID-19.

| 3/24/2020 | 6 | 3 | 0 | 9 |
|---|---|---|---|---|
| 3/25/2020 | 6 | 3 | 0 | 9 |
| 3/26/2020 | 10 | 8 | 0 | 18 |
| 3/27/2020 | 14 | 13 | 0 | 27 |
| 3/28/2020 | 19 | 19 | 1 | 38 |
| 3/29/2020 | 19 | 19 | 1 | 38 |
| 3/30/2020 | 28 | 24 | 1 | 52 |
| 3/31/2020 | 29 | 30 | 1 | 59 |
| 4/1/2020 | 57 | 37 | 3 | 94 |
| 4/2/2020 | 75 | 39 | 6 | 114 |
| 4/3/2020 | 91 | 50 | 7 | 141 |
| 4/4/2020 | 120 | 54 | 8 | 174 |
| 4/5/2020 | 138 | 59 | 8 | 197 |
| 4/6/2020 | 196 | 63 | 8 | 259 |
| 4/7/2020 | 241 | 72 | 8 | 313 |
| 4/8/2020 | 272 | 105 | 8 | 377 |
| 4/9/2020 | 283 | 125 | 8 | 408 |
| 4/10/2020 | 318 | 163 | 9 | 481 |
| 4/11/2020 | 335 | 185 | 9 | 520 |
| 4/12/2020 | 352 | 189 | 10 | 541 |
| 4/13/2020 | 388 | 201 | 13 | 589 |
| 4/14/2020 | 446 | 248 | 14 | 694 |
| 4/15/2020 | 451 | 280 | 16 | 731 |
| 4/16/2020 | 473 | 279 | 18 | 752 |
| 4/17/2020 | 465 | 296 | 18 | 761 |
| 4/18/2020 | 479 | 305 | 21 | 784 |
| 4/19/2020 | 495 | 309 | 22 | 804 |
| 4/20/2020 | 497 | 319 | 22 | 816 |
| 4/21/2020 | 540 | 323 | 23 | 863 |
| 4/22/2020 | 566 | 342 | 24 | 908 |
| 4/23/2020 | 620 | 357 | 24 | 977 |
| 4/24/2020 | 649 | 336 | 25 | 985 |
| 4/25/2020 | 730 | 317 | 26 | 1047 |
| 4/26/2020 | 799 | 319 | 27 | 1118 |
| 4/27/2020 | 1046 | 330 | 28 | 1376 |
| 4/28/2020 | 1314 | 335 | 30 | 1649 |
| 4/29/2020 | 1534 | 343 | 31 | 1877 |
| 4/30/2020 | 1692 | 349 | 33 | 2041 |
| 5/1/2020 | 1842 | 343 | 36 | 2185 |
| 5/2/2020 | 1919 | 349 | 37 | 2268 |

| 5/3/2020 | 1926 | 350 | 38 | 2276 |
|---|---|---|---|---|
| 5/4/2020 | 1984 | 356 | 40 | 2340 |
| 5/5/2020 | 2066 | 359 | 41 | 2425 |
| 5/6/2020 | 2100 | 365 | 42 | 2465 |
| 5/7/2020 | 2646 | 244 | 44 | 2890 |
| 5/8/2020 | 3082 | 248 | 45 | 3330 |
| 5/9/2020 | 3330 | 250 | 46 | 3580 |
| 5/10/2020 | 3319 | 250 | 48 | 3569 |
| 5/11/2020 | 3379 | 250 | 49 | 3629 |
| 5/12/2020 | 2817 | 279 | 50 | 3096 |
| 5/13/2020 | 2820 | 266 | 51 | 3086 |
| 5/14/2020 | 2322 | 272 | 52 | 2594 |
| 5/15/2020 | 2296 | 275 | 55 | 2571 |
| 5/16/2020 | 2280 | 283 | 56 | 2563 |
| 5/17/2020 | 2319 | 284 | 56 | 2603 |
| 5/18/2020 | 2338 | 196 | 57 | 2534 |
| 5/19/2020 | 2298 | 198 | 57 | 2496 |

**TABLE 2: Nationwide Reported COVID-19 Positive Inmates**



Indeed, the rate of infection within the BOP is substantially higher—between 6 and 7 times higher—than elsewhere in the United States.  The BOP infection rate is similarly substantially

15

higher as a percentage of population, than the infection rates in China and Italy, the two countries, other than the United States, that have been hardest hit by COVID-19:

**TABLE 3: COVID-19 Rate of Infection for Various Populations[7]**

| Location | Cases | Population | Infections/ 1,000 People | Infection Rate as Percent of Population |
|---|---|---|---|---|
| BOP Imprisoned Population | 4,464 | 149,897 | 29.78 | 2.9780% |
| United States | 1,519,986 | 329,671,326 | 4.61 | 0.4611% |
| China | 84,063 | 1,394,015,977 | 0.06 | 0.0060% |
| Italy | 226,699 | 62,402,659 | 3.63 | 0.3633% |

**TABLE 4: INFECTION RATE OF BOP COMPARED TO U.S., CHINA & ITALY**

| | BOP has an infection rate X times higher |
|---|---|
| Compared to the United States | 6.459112 |
| Compared to China | 493.8489 |
| Compared to Italy | 8.197562 |

COVID-19 has already arrived at FCI Aliceville, where Ms. Bayuo is located. FCI Aliceville is a low security federal correctional institution with an adjacent minimum security satellite camp located in Aliceville, Alabama. The institution and its satellite camp, combined, house approximately 1,375 female inmates. Federal Bureau of Prisons, FCI Aliceville,

---

[7]    For Table 3, the "Cases" column includes the number of BOP inmates who have tested positive for COVID-19, the number of BOP inmates who have recovered, and the number of BOP inmates who have died from COVID-19. The "Population" column includes the number of federal inmates in BOP-managed institutions, the number of federal inmates in community-based facilities, and the number of federal inmates who have died from COVID-19. The numbers in Table 3 for BOP cases and population were obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn). The numbers in Table 3 for U.S., China and Italy cases and population were obtained on May 19, 2020 from https://coronavirus.jhu.edu/map.html and https://www.census.gov/popclock/.

https://www.bop.gov/locations/institutions/ali/ (last visited May 21, 2020).   According to the BOP's website, as of the date of this motion, FCI Aliceville currently has 1 active inmate case and 6 active staff cases of COVID-19, as well as 9 recovered inmate cases and 3 recovered staff cases. Federal Bureau of Prisons, COVID-19 Coronavirus, https://bop.gov/coronavirus/index.jsp (last visited May 21, 2020).   Ms. Bayuo advised that she lives in a shared cell with one other inmate, that she shares a hall bathroom with dozens of other inmates, and that though inmates and staff at FCI Aliceville have been provided with face masks, both other inmates and staff are only wearing them intermittently.

Union representative Terrence Windham, who is a corrections officer and an Aliceville city councilman, expressed concerns in March 2020 that FCI Aliceville did not have "equipment including cleaning supplies and testing supplies."   Tim Reid, *Coronavirus raises concerns at Aliceville Federal Prison*, CBS 42, Mar. 17, 2020, https://www.cbs42.com/news/health/coronavirus/coronavirus-raises-concerns-at-aliceville-federal-prison/ (last visited May 21, 2020).   In mid-April 2020, news outlets reported that inmates at FCI Aliceville "who are supposed to be under quarantine because they are symptomatic, are being housed with uninfected inmates."   Luke Barr, *Bureau of Prisons coronavirus response under fire: 'Reactive,' not 'proactive,' inmates, staff say*, ABC NEWS, April 13, 2020, https://abcnews.go.com/Health/bureau-prisons-coronavirus-response-fire-reactive-proactive-inmates/story?id=70063263 (last visited May 21, 2020).   And today, the majority of COVID-19 cases in prisons in Alabama are at FCI Aliceville with 19 confirmed cases thus far (out of 28 total in the state) according to the BOP's website.   Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited May 22, 2020).

It is a certainty that even these concerning numbers substantially understate the spread of COVID-19 in prisons, and within FCI Aliceville.  Testing within the BOP—as in the rest of the country—has been inadequately implemented.  Both courts around the county and the national press have called into question the adequacy of the BOP's response to the pandemic and the reliability of BOP case data, given the limited testing being done.  *See, e.g.*, Michael Balsamo, *Over 70% of Test Inmates in Federal Prisons Have COVID-19*, AP News, Apr. 29, 2020, https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f (last visited May 21, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *8-10 (E.D. Pa. Apr. 1, 2020) ("While [Attorney General Barr] also expressed confidence in the BOP's 'ability to keep inmates in our prisons as safe as possible from the pandemic sweeping across the globe,' the situation has changed swiftly since he wrote the memo and the BOP's reported COVID-19 cases have since tripled.").  It is likely that COVID-19 is far more prevalent at FCI Aliceville than the BOP's numbers would suggest.

Moreover, FCI Aliceville is in close proximity to Halls Cold Storage Processing Plant and less than an hour drive away from several large nursing homes in the city of Tuscaloosa, Alabama.  According to the New York Times, Dr. Anthony S. Fauci, the White House's COVID-19 task force's chief medical adviser, has said he expects cases to spike in closed environments like nursing homes, prisons and factories.  Donald G. McNeil Jr, *As States Rush to Reopen, Scientists Fear a Coronavirus Comeback*, N.Y. Times, May 11, 2020, https://www.nytimes.com/2020/05/11/health/coronavirus-second-wave-infections.html (last visited May 21, 2020).  That Ms. Bayuo is living in a prison centered between several large nursing homes and factories puts her particularly at risk, given the likely overlap of staff among these facilities within families and the community at large.

18

The rate of COVID-19 infection within this country's prisons, while alarming, is not surprising.  The CDC recommends protecting oneself from the disease by frequent handwashing, frequent sterilization of surfaces, and individuals remaining at a distance of at least six feet from each other.  It is impossible to do that at FCI Aliceville, or any other prison facility.  As Judge Abrams recently found, "[t]he nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk." *United States v. Park*, 2020 WL 1970603, at *2 (ordering immediate release), citing *United States v. Resnick*, No. 14-cr-810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (noting "the limitations in a prison environment . . . on practicing the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission").

This is precisely why many courts around the country have granted release to defendants incarcerated at facilities with zero reported cases of COVID-19.  For example, a district court in Nevada recently granted compassionate release to a defendant at a facility with no reported COVID-19 cases, recognizing that the realities of prison life make it impossible for medically vulnerable inmates—like Ms. Bayuo—to follow CDC guidelines to protect themselves from COVID-19.  *See United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at * 2-4 (D. Nev. Apr. 17, 2020).  Similarly, in *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020), a Michigan district court also ordered the release of a medically vulnerable inmate from a facility with no reported COVID-19 cases, because he could not adequately protect himself in line with CDC guidelines.  *Id.* at *2-3.  These cases are far from outliers; many judges have released inmates from prisons that have no confirmed cases of COVID-19.  *See, e.g.*, *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw.

Apr. 13, 2020); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) ("absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility"); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) ("Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released.").

> **C.    Ms. Bayuo's Immediate Release to Home Confinement Presents No Danger to the Community, and Is Otherwise Consistent with Federal Sentencing Goals.**

In contrast to the serious risk that continued incarnation poses to Ms. Bayuo, her release from prison poses no risk to the public, and her immediate release is consistent with the federal sentencing goals, as articulated in the Section 3553(a) factors and the Sentencing Commission's policy statements, to the extent they apply. *See* 18 U.S.C. 3582(c)(1)(A) and (A)(ii) (authorizing courts to modify an otherwise-final term of imprisonment, if it is consistent with the Section 3553(a) factors and the Sentencing Commission's policy statements).

If released, Ms. Bayuo would go immediately to live with her longtime friend Labaran Ahmed in New York. Mr. Ahmed lives in a three-bedroom apartment at 1770 Walton Avenue in the Bronx. Mr. Ahmed represented to counsel that he is agreeable and willing to speak to Probation with regards to Ms. Bayuo's potential release. Once in New York, Ms. Bayuo intends to comply with CDC recommendations regarding self-quarantine.

> 1.    Ms. Bayuo's Immediate Release Is Consistent With the Section 3553 Factors.

Under 18 U.S.C. § 3553(a), the Court is tasked with imposing "a sentence sufficient, but not greater than necessary" to, *inter alia*, reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the

defendant with needed treatment.  First, as was true at sentencing, and remains true today, Ms. Bayuo poses no risk of reoffending if released, nor is she otherwise a danger to the community. The crimes for which she was convicted, while serious, were nonviolent financial crimes, and were perpetuated through her tax preparation business, which has since closed. *Bayuo* PSR at ¶ 11.  She has no prior criminal history. *Id.* at ¶¶ 49-54.

Second, and even more important for these purposes, Ms. Bayuo was originally arrested on July 1, 2013, and released on bail shortly thereafter. *Id.* at page 2.  During the more than four years between her release in July 2015 and the date on which she was allowed to self-surrender to FCI Aliceville, in August 2019, Ms. Bayuo complied with all terms and conditions of her pretrial release. *Id.* at page 30 ("The defendant is viewed as a good candidate for voluntary surrender.  She has kept all court appearances and has been in compliance with all terms and conditions of her pretrial release.  She is not viewed as a flight risk or a danger to the community.").  Indeed, the Court agreed at Ms. Bayuo's sentencing hearing, ordering she be allowed to voluntarily surrender. *Bayuo* Sentencing Hr'g Tr. 34:2-4.  This order underscored the Court's response to the Government's post-trial motion that Ms. Bayuo be remanded prior to sentencing.  The Court denied the motion, holding that there was "clear and convincing evidence that the defendant will not flee," and would, in fact, report to court for her sentencing hearing:  "[T]he defendant is in the same position now as she was years ago.  When she pleaded guilty to four felonies, did not seek to flee, was interviewed by the probation department, chose to fight the conviction. . . . [T]he defendant made no effort other than to appear in court and through numerous other proceedings." *Bayuo* Trial Tr. 1546:16-1547:7 (Nov. 1, 2018).

The circumstances of Ms. Bayuo's incarceration have changed dramatically since the Court sentenced her in May 2019.  Given the current realities of COVID-19 and its transmission in

prisons, an immediate modification of Ms. Bayuo's sentence to serve the remainder of her term of imprisonment in home confinement is "sufficient, but not greater than necessary" to promote the federal sentencing goals. *See Zukerman*, 2020 WL 1659880, at *6 ("The severity of Zukerman's conduct remains unchanged.  What has changed, however, is the environment where Zukerman is serving his sentence.  When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic."), citing *Rodriguez*, 2020 WL 1627331, at *12.

2.    Ms. Bayuo's Immediate Release Is Also Consistent With U.S.S.C. §<br>1B1.13, To the Limited and Non-Binding Extent It Applies.

The Sentencing Commission's policy statement regarding sentence reductions under § 3582(c)(1)(A) is contained in U.S.S.G. § 1B1.13.  The background note recognizes that:

> The Commission is required by 28 U.S.C. § 994(a)(2) to develop general policy statements regarding application of the guidelines or other aspects of sentencing that in the view of the Commission would further the purposes of sentencing (18 U.S.C. § 3553(a)(2)), including, among other things, the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3852(c).  In doing so, the Commission is authorized by 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

§ 1B1.13.  However, the Commission has not updated § 1B1.13 in the year and a half since § 3582(c)(1)(A) was amended in 2018.  As such, the Commission's existing policy statement addresses only the pre-First Step Act version of § 3582(c)(1)(A) and speaks only to conditions under which a reduction is appropriate under the more restrictive criteria—i.e., a motion brought by the BOP where the defendant is "suffering from a terminal illness," or "experiencing a serious deterioration in physical or mental health because of the aging process."  § 1B1.13 Application Note 1.  Accordingly, there is no policy statement of the Commission addressing motions (like the instant motion) brought by a defendant on the grounds of high risk of severe illness and/or death as a result of COVID-19.  *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL

1248493, at *6 (E.D. Va. Mar. 16, 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement'") & n.11 (collecting cases).

At the absolute least, "[s]ince the First Step Act changes the law to allow a compassionate release reduction to be granted by the Court without input from the BOP, the pre-First Step Act references in the policy statement to determinations by the BOP are outdated and not binding." *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674 at *3 (D. Md. Apr. 28, 2020) (citing *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505 at *5-6 (M.D.N.C. June 28, 2019)). Indeed, "nearly all district courts hold that—since the [First Step Act]'s passage—section 1B1.13 is not binding but is, rather, helpful guidance." *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020) (collecting cases).

Indeed, the pre-2018 statement does provide general support for a reduction under these circumstances, even in its outdated form. Application Note 1 defines "extraordinary and compelling reasons," in relevant part, as encompassing "other reasons" beyond those the Commission has expressly enumerated—that is, where "there exists in the defendant's case an extraordinary and compelling reason *other than*, *or in combination with*, the reasons described in subdivisions (A) through (C)." (emphasis added). The Commission acknowledged through this catchall provision that "extraordinary and compelling reasons" may exist on the basis of the "medical condition of the defendant" *beyond* a terminal illness or substantial age-related deterioration. *See United States v. Guzman Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787 at *2-3 (D. Mass. May 1, 2020). And "the Attorney General, in giving direction to the Director of the Bureau of Prisons, has recognized that COVID-19 is an extraordinary and compelling factor which may be considered." *Id.* at *3.

The Commission also acknowledged that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." § 1B1.13, Application Note 2. Of course, the COVID-19 pandemic and its interaction with Ms. Bayuo's pre-existing medical conditions was not foreseeable at the time of Ms. Bayuo's sentencing—but even if it was, a reduction would *still* be consistent with the existing statement.

Finally, § 1B1.13 explicitly acknowledges that the Court is in the best position to determine whether the circumstances of Ms. Bayuo's case justify a sentence reduction:

> The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

§ 1B1.13 Application Note 4.

For all of these reasons, courts in this district and elsewhere have not hesitated to find that "extraordinary and compelling reasons warrant [a] reduction" for defendants at risk of death and/or severe illness from COVID-19. § 1B1.13(1)(A).[8] This Court should do the same for Ms. Bayuo.

---

[8]       *See, e.g.*, *United States v. El-Hanafi*, 10-cr-162 (KMW), Order, Dkt. Entry 252 (S.D.N.Y. May 19, 2020) (granting contested release to defendant classified as "high-risk" because of hypertension and other health issues); *Scparta*, 2020 WL 1910481 (granting contested release to 55 year-old defendant with high blood pressure, high cholesterol, and sleep apnea); *United States v. Hernandez*, No. 18 CR. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (granting contested release to high risk defendant with asthma). *See also, e.g.*, *Sawicz*, 2020 WL 1815851, at *2 (granting contested release to defendant with hypertension); *Wen*, 2020 WL 1845104, at *2 (granting contested release to defendant with asthma); *United States v. Ullings*, No. 1:10-CR-00406, 2020 WL 2394096, at *4-5 (N.D. Ga. May 12, 2020) (granting contested release to 66 year-old defendant with hypertension and obesity); *United States v. Foreman*, No. 3:19-CR-62 (VAB), 2020 WL 2315908, at *2-3 (D. Conn. May 11, 2020) (granting contested release to 58 year-old defendant with hypertension and obesity); *Amarrah*, 2020 WL 2220008, at *6-8 (granting contested release to 45 year-old defendant with diabetes, hypertension, and asthma); *United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (granting contested release to 52 year-old defendant with COPD, diabetes, obesity, kidney disease, edema, and a hernia); *United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at

24

## **CONCLUSION**

For the foregoing reasons, Ms. Bayuo requests that the Court order indicative relief under Federal Rule of Criminal Procedure 37, stating either that it would grant her motion for compassionate release or that the motion raises a substantial issue.

---

*1 (E.D. Pa. May 4, 2020) (granting contested release to 54 year-old defendant with diabetes, hypertension, hemophilia, atopic dermatitis, GERD, peptic ulcer, and diverticulitis); *Coles*, No. 2020 WL 1976296 (granting contested release to 48 year-old defendant with hypertension, prostate issues, bladder issues, prediabetes, and dental infection); *United States v. Gorai*, No. 218CR220JCMCWH, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (granting contested release to defendant with asthma); *United States v. Atwi*, No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) (granting contested release to defendant with latent tuberculosis and other chronic health issues); *Atkinson*, 2020 WL 1904585, *4 (D. Nev. Apr. 17, 2020) (granting contested release to defendant with "preexisting medical condition that makes him particularly susceptible to COVID-19"); *United States v. Hammond*, No. CR 02-294 (BAH), 2020 WL 1891980, *9 (D.D.C. Apr. 16, 2020) (granting contested release to defendant with COVID-19 risk factors because, despite the government's assurance that the "BOP is prepared to deal with pandemics such as the coronavirus . . . 449 inmates and  280 BOP staff members have tested positive for the disease and sixteen inmates have already died"); *Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842, *4 (E.D. Mich. Apr. 16, 2020) (granting contested release where "[c]ontinuing [defendant's] incarceration under the current circumstances could be a lethal decision"); *United  States v. Cosgrove*, No. CR15-230-RSM, 2020 WL 1875509, at *2  (W.D. Wash. Apr. 15, 2020) (reconsidering prior denial and granting contested release because of "rapid" deterioration of conditions at Terminal Island FCI); *Ben-Yhwh*, 2020 WL 1874125, *5 ("serious medical  conditions . . . combined with the COVID-19 crisis constitute an extraordinary and compelling reason to modify [defendant's] sentence from his remaining term of incarceration to home detention"); *United States v. Mahan*, No. 1:19-CR-00233-DCN, 2020 WL 1846789, *4 (D. Idaho Apr. 10, 2020) (granting contested release where "[d]efendant has a chronic, moderate asthma condition and such a condition places him at higher risk of getting very sick from COVID-19"); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *1, *5 (D. Conn. Apr. 8, 2020) (granting contested release to 65 year-old defendant with asthma and COPD).

GOODWIN PROCTER LLP

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)
Anne E. Railton (AR0618)
Valerie A. Haggans (VK1115)
Lindsay E. Hoyle (LH1245)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800
rstrassberg@goodwinlaw.com
arailton@goodwinlaw.com
vhaggans@goodwinlaw.com
lhoyle@goodwinlaw.com

Courtney D. Orazio (*pro hac vice*)
100 Northern Avenue
Boston, Massachusetts 02210
(617) 570-1634
corazio@goodwinlaw.com

*Attorneys for Defendant Rebecca Bayuo*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/ Richard M. Strassberg
Richard M. Strassberg